Babi **CHANDAMURI**, Plaintiff,

v.

**GEORGETOWN UNIVERSITY,** Defendant.

No. CIV.A. 02–02038 (RCL).

United States District Court, District of Columbia.

July 22, 2003.

---

David W. Sanford, Gordon, Silberman, Wiggins, & Childs, P.C., Eric Bachman, Gordon, Silberman, Wiggins, & Childs, P.C., Grant E. Morris, Law Offices of Grant E. Morris, Washington, DC, for Plaintiff.

Johnathan T. Rees, Hogan & Hartson L.L.P., Washington, DC, for Defendant.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before this Court on a Motion to Dismiss [3]. Plaintiff submitted a Memorandum in Opposition [7], and the defendant subsequently filed a Reply to Plaintiff's Opposition [10]. Upon consideration of the parties' filings and the applicable law, this Court finds that the defendant's motion to dismiss [3] should be granted.

### I. BACKGROUND

Plaintiff Babi Chandamuri ("Chandamuri") brought suit alleging unlawful discrimination on the basis of national origin and retaliation against Georgetown University ("Georgetown") under the District of Columbia Human Rights Act of 1977, as amended December 2000, D.C.Code §§ 2–1401.01, 2–1402.01 and 2–1402.41, .61, and .68 (hereinafter "DCHRA") and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d as amended ("Title VI").

This suit was brought following Chandamuri's sanction for plagiarism during the second semester of his senior year, the 2001–2002 academic year. Chandamuri is an American citizen of Indian descent. In the Spring of 2002, Chandamuri enrolled in Chemistry 420, Advanced Biochemistry, under the instruction of Dr. Paul Roepe ("Roepe"). Prior to his Spring 2002 course, Chandamuri took an independent research course at Georgetown Hospital in Fall semester 2000; Dr. Roepe was the faculty member overseeing Chandamuri's research. At the conclusion of the Fall 2000 semester, Dr. Roepe gave Chandamuri a grade of B+. Chandamuri contested the grade by raising the matter with the Chair of the Chemistry Department, Dr. Kertesz, claiming that Dr. Roepe had treated him unfairly and differently than other "similarly situated" students in Dr. Roepe's class. Chandamuri's basis for this perceived unfair treatment was that other students and Chandamuri's advisor had advised him the course was supposed to be an "easy A." After Dr. Kertesz communicated with Dr. Roepe regarding the grade, Dr. Kertesz informed Chandamuri that Dr. Roepe would not change Chandamuri's grade for the course. Dr. Kertesz advised Chandamuri against pursuing the complaint with the Assistant Dean of Georgetown College, because Chandamuri was required to take an upperclass Biochemistry course with Dr. Roepe during his senior year. Chandamuri did not appeal to the Assistant Dean regarding the Fall semester 2000 grade.

A requirement of the Spring 2002 Advanced Biochemistry course was that students complete a term paper on a topic of their own selection, subject to approval by Dr. Roepe. The term paper was valued at 20% of the total grade. Chandamuri submitted the paper by April 24, 2002, in accordance with the dates established by Dr. Roepe. On May 2, 2002, Dr. Roepe

informed Chandamuri via email that Roepe was reporting Chandamuri to the Georgetown University Honor Council ("Honor Council") for committing plagiarism in violation of the Georgetown University Honor Code, *Integrity, The Honor System*, 2001–2002 ("Honor Code"). On May 5, 2002, an Investigating Officer for the Honor Council contacted Chandamuri to discuss the events surrounding the alleged violation. On May 7, 2002, Chandamuri was notified by the Faculty Chair of the Honor Council that there was sufficient evidence to send his case to a Hearing Board and that his Honor Council hearing would be held May 9, 2002 at 5:00 p.m.

At the hearing, the Honor Council concluded that Chandamuri was in violation of the Honor Code. Chandamuri was notified that the Honor Council recommended that he be suspended for one semester, with a notation regarding the suspension entered onto Chandamuri's official Georgetown transcript, and that the action taken by the Honor Council Hearing Board would not affect any additional action that may be imposed by the professor. Chandamuri's attorneys notified the Faculty Chair of the Honor Council that Chandamuri was appealing the decision of the Honor Council Hearing Board. Chandamuri's appeal alleged several procedural violations, including the untimely notification of his opportunity to produce documents, the Honor Council's failure to define plagiarism for the purpose of the hearing, and the failure to establish the procedures by which the hearing was to be run. Compl. ¶ 19, 22.

Chandamuri was given a second hearing on June 19, 2002. The new hearing was conducted by a different Investigating Officer and Hearing Board. The Honor Council notified Chandamuri that the punishment recommended was the same: a suspension for one semester, with a nota-

tion regarding the suspension entered on Chandamuri's official Georgetown transcript, and that the action taken by the Honor Council Hearing Board would not affect any additional action that may be imposed by the professor. Chandamuri alleges that the second hearing was also flawed by the failure to establish the standards for plagiarism and failure to articulate the process by which he would be adjudged.

Chandamuri alleges that Georgetown violated his federal civil rights under Title VI of the Civil Rights Act of 1964, and his human rights under the DCHRA in their handling of plagiarism claims brought against him. In his prayer for relief, Chandamuri sought compensatory, punitive, and nominal damages against Georgetown, and requested that the district court issue a declaratory judgment that Georgetown had violated Chandamuri's rights, as well as order Georgetown to absolve Chandamuri of all violations of the Honor Code and issue him a degree from Georgetown University.

## II. LAW AND APPLICATION

### A. Standard of Review for a Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but whether the plaintiff has properly stated a claim. See Fed.R.Civ.P. 12(b)(6); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Federal Rules only require that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), because the complaint "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (quoting *Conley v. Gib-*

*son*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

The court must accept as true all well-pleaded factual allegations and grant plaintiff the benefit of all *reasonable* inferences that can be derived from the alleged facts. *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99; *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994); *see Judicial Watch, Inc. v. Clinton*, 880 F.Supp. 1, 7 (D.D.C.1995) (Lamberth, J.). The suit may be dismissed for failure to state a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. In deciding a 12(b)(6) motion to dismiss, the Court will consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters about which the Court may take judicial notice. *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C.Cir. 1997).

**B. State Law Claims**

■ When a federal court has an independent basis for exercising federal jurisdiction, the court may also exercise supplemental jurisdiction over "claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (2001); *Women Prisoners of D.C. Dep't of Corr. v. District of Columbia*, 93 F.3d 910, 920 (D.C.Cir.1996). To be adequately related, the federal and state claims must "derive from a common nucleus of operative fact ... [and] are such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ The plaintiff's Federal Civil Rights claim under Title VI and his D.C. statutory claims "derive from a common nucleus of operative fact," namely, the circumstances surrounding the plagiarism incident. Therefore, this Court can exercise supplemental jurisdiction over the D.C. claims pursuant to 28 U.S.C. § 1367. While federal courts have the discretion to decline to exercise jurisdiction over state claims, the Court concludes that "considerations of judicial economy, convenience, and fairness to litigants" favor the several claims being litigated in a single proceeding. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (citations omitted).

**C. Chandamuri's Discrimination Claims**

■ Chandamuri alleges discrimination on the basis of national origin in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq* and DCHRA, D.C.Code §§ 2–1401.01, 2–1402.01, 2–1402.41, 2–1402.68. Title VI, § 601 states, "No person in the United States shall, on the ground of ... national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. The DCHRA prohibits acts of discrimination that interfere with the rights of any and all individuals and makes it illegal for an educational institution to "deny, restrict, or to abridge or condition the use of, or access to, any of its facilities and services to any person otherwise qualified ... for a discriminatory reason, based upon the ... national origin ... of any individual." D.C.Code §§ 2–1042.41.

The D.C. Circuit has held that a plaintiff is not required to set forth the *prima facie* elements of a discrimination claim at the

initial stage. In *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C.Cir. 2000), the D.C. Circuit affirmed that the *McDonnell Douglas* test provides the framework for proving unlawful discrimination, and that, as an initial matter, the test's first prong places the burden on a plaintiff to establish a *prima facie* case of discrimination by demonstrating (1) that he is a member of a protected class; (2) that he was similarly situated to a student who was not a member of the protected class; and (3) that he and the similarly situated person were treated disparately. However, the Circuit stated that "none of this ... has to be accomplished in the complaint itself." *Sparrow*, 216 F.3d at 1114. In evaluating what plaintiff *is* required to establish for his complaint to survive Georgetown's motion to dismiss, this Court is instructed by the D.C. Circuit's more recent analysis in *Browning v. Clinton*, 292 F.3d 235 (D.C.Cir.2002). The Circuit emphasized that despite the fact that the complaint "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests,' ...we accept neither 'inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint,' nor 'legal conclusions cast in the form of factual allegations.' " *Browning*, 292 F.3d at 242, quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (citations omitted).

With these standards in mind, the Court begins with Chandamuri's allegations that Georgetown denied him access to its "facilities and services" and that "this disparate treatment was motivated by intent to discriminate against" him. Chandamuri claims that the Honor Council treated him differently from "similarly situated white students" by: (1) deviating from its established policies and procedures in the disciplinary action taken against him, including

failing to produce a definition of plagiarism in his disciplinary hearings and failing to consider the mitigating circumstances of his family crises at the time; and (2) punishing Chandamuri in an "unduly and unusually harsh" manner in suspending for his violation of the Honor Code. Chandamuri claims that he was qualified to pass Chemistry 420 but for the "discriminatory disciplinary action" taken against him by Dr. Roepe, Dr. Kertesz, and members of the Georgetown Honor Council.

### a. Deviation from Procedures

■ There is no evidence that the Honor Council's hearing was not conducted in accordance with the procedures published in the Honor Code. Chandamuri's persistent contention that the Honor Council discriminated against him by failing to produce a cohesive definition of plagiarism in his disciplinary hearings is without merit and unmistakably contradicted by the Georgetown documents referenced in his complaint.

Chandamuri states that Dr. Roepe reported him for plagiarism because, in his paper, he did not place direct passages of previously-published articles within quotation marks. Chandamuri alleges that Dr. Roepe's definition of plagiarism is not supported by the Honor Council materials on the basis that Chandamuri cited the authors upon whose work he relied and therefore did not *intend* to pass off the work of others as his own. Chandamuri maintains that his actions do not meet Georgetown's definition of plagiarism and alleges that the Honor Council hearing was severely flawed because the Honor Council never defined plagiarism for the purpose of the hearing or established the procedures by which the hearing was to be run.

The rules governing the proceedings to adjudicate academic dishonesty cases are clearly set forth in the Honor Code, as is the Honor Council's definition of plagiarism. The Honor Code prohibits plagiarism in any of its forms, whether it is intentional or unintentional, and defines plagiarism as "the act of passing off as one's own ideas the writing of another." *See* Mot. to Dismiss, App. 2–3 (Honor Code; Georgetown University Honor Council, *What is Plagiarism?*). The Honor Council document goes beyond the general definition to provide several explicit examples of different types of plagiarism, as well as instructions for properly acknowledging the authors' works.

Even if Dr. Roepe's definition of plagiarism were unsupported by the Honor Council materials, Dr. Roepe was not a participant in the ultimate adjudication of the matter. The Honor Council conducted the investigation and hearing, and decided, based on its published definition, that Chandamuri had committed plagiarism. Chandamuri's attempt to frame the fact that the Honor Council did not reiterate the definition of plagiarism as a "procedural irregularity" and to construe it as the foundation for an inference of discriminatory animus is an effort that is, at best, unreasonable and wholly unsupported by the facts.

Chandamuri next alleges that Georgetown violated its Sanctioning Guidelines when it refused to consider the mitigating circumstances of his several family crises during the Spring semester of 2002. *See* Mot. to Dismiss App. 4. However, the Honor Council's Sanctioning Guidelines state that the Hearing Board *may* raise or lower the sanction by one level, depending on mitigating or exacerbating circumstances. *Id.* By his own allegations, Chandamuri admits that the Honor Council's power to adjust a sanction is *discretionary*. The

decision not to exercise that discretion to adjust Chandamuri's sanction cannot be equated with a violation of the Sanctioning Guidelines. Even if Chandamuri thinks it unfair that the Honor Council did not adjust his sanction due to the unfortunate circumstances in his personal life, there are simply no grounds for a logical inference that the Honor Council declined to exercise its discretion for any discriminatory purpose.

The final, devastating blow to Chandamuri's incredible inference of discrimination is that, after reviewing Chandamuri's family situation, the Dean of Georgetown College, Dr. Jane McAuliffe, *did* reduce his punishment from a level "4" to a level "3," meaning that Chandamuri would not be suspended for one semester; instead, he would only receive a notation of "Honor Council Violation" on his Georgetown University transcript, which can be permanently removed from his record if he agrees to a "sanction reduction plan." In light of the fact that the Dean chose to exercise her discretion *to the greatest extent possible under the Sanctioning Guidelines,* the Court finds this argument to be wholly without merit. Chandamuri's contradictory factual allegations-that the Honor Council discriminated against him by not exercising a discretionary measure and, in the same complaint, his concession that the Dean did grant leniency and reduce his penalty-cannot support an inference of discrimination. In this instance, he has clearly alleged "facts that render success on the merits impossible." *Sparrow,* 216 F.3d at 1116.

**b. Punishment "unduly and unjustly harsh"**

▇ Chandamuri's allegation of unduly and unusually harsh punishment is founded on the May 10, 2002, comment by Sonia Jacobson, an employee in the Office of

the Provost, that the severity of the punishment surprised her. Compl. ¶ 21. According to Ms. Jacobson, Georgetown had never given out a "5," equal to expulsion on the punishment scale, and that the punishment of "4," equal to the suspension given to Chandamuri, was generally reserved only for the most egregious violations of the Honor Code. Without a foundation to do so, Chandamuri offers a creative interpretation of Ms. Jacobson's sympathetic comment and asserts that he was treated differently than "similarly-situated white students." This assertion is conclusory and without any factual support. As noted in *Browning*, on a Rule 12(b)(6) motion, the court may not accept "legal conclusions cast in the form of factual allegations." 292 F.3d at 242. The Court notes that Ms. Jacobson was not a member of the Honor Council Hearing Board at either hearing, nor is it clear that she was familiar with the circumstances surrounding the case. Further, Ms. Jacobson's comment in no way indicates that Chandamuri was punished more severely than *white students,* only that *she* did not believe his offense merited the sanction.

■ In his complaint, Chandamuri lays out Georgetown's classification system for "Minor" and "Major" papers, projects, or tests, indicating that the Honor Council's Sanctioning Guidelines state that papers that count for 5% to 20% of the semester grade are considered minor, while papers that count for 20% or more are considered major, but that the cutoff may vary depending on the particular professor's grading scheme. Compl. ¶ 34. Chandamuri admits that Dr. Roepe's assignment was worth 20% of his semester grade, and states that the Sanctioning Guidelines indicate that the punishment of suspension is appropriate for serious violations of the Honor Code. At best, Chandamuri could

allege that the Honor Council abused its discretion in considering his paper 'major' and issuing the sanction for a 'serious violation,' but his use of the exchange with Ms. Jacobson as evidence of discrimination is nothing more than conjecture. Courts are not permitted to "go beyond the language of the statement at issue to find inferences of bias where none exist." *Jalal v. Columbia Univ. in City of New York,* 4 F.Supp.2d 224, 236 (S.D.N.Y.1998). The Court is unconvinced that Chandamuri's overbroad speculation about Ms. Jacobson's comment creates a basis in fact for an inference of discrimination.

Chandamuri relies on *Sparrow* to assert that, "[a]s a civil rights matter alleging national origin discrimination ... Plaintiff's allegation that Defendant discriminated against him on the basis of national origin is alone sufficient to defeat Defendant's Motion to Dismiss." Opp. to Mot. to Dismiss at 9. While *Sparrow* does articulate a liberal pleading standard, and Chandamuri need not plead all the elements of the *prima facie* case of discrimination in the complaint, this Court follows the D.C. Circuit and rejects Chandamuri's conclusory inferences of national-origin discrimination because "such inferences are unsupported by the facts set out in the complaint." *Browning,* 292 F.3d at 242. The only inference that reasonably flows from Chandamuri's factual allegations is that Chandamuri was disciplined for plagiarism. The D.C. Court of Appeals has previously noted that it will not second-guess an educational institution's application of its own academic standards and procedures unless the plaintiff "can provide some evidence from which a fact finder could conclude that there was no rational basis for the decision or that it was motivated by bad faith or ill will unrelated to academic performance." *Alden v. Georgetown University,* 734 A.2d 1103, 1109 (D.C.1999) (citation omitted). Given

the facts set forth by Chandamuri, the Court is unconvinced that he will ever be able to meet his burden of establishing a *prima facie* case. As such, Chandamuri's claims for discrimination under Title VI and the DCHRA cannot survive and are hereby dismissed.

### D. Chandamuri's Retaliation Claims

#### a. Title VI Cause of Action for Retaliation

■ Chandamuri claims that his sanction for plagiarism is the result of retaliation for his complaint about the grade he received from Dr. Roepe after his Fall 2000 independent research course. The Court next considers whether Title VI provides Chandamuri a private right of action against Georgetown for its allegedly retaliatory actions. This is an issue of first impression before this Court.

Title VI of the Civil Rights Act of 1964 contains a rights-creating provision, § 601, that provides "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. In Title VI § 602, Congress authorized federal agencies to "effectuate the provisions of [ § 601] … by issuing rules, regulations, and orders of general applicability." 42 U.S.C. § 2000d–1. While Congress created a right to be free from intentional discrimination in Title VI, the statute does not include a specific prohibition on retaliation beyond the general prohibition of racial discrimination. 42 U.S.C. § 2000d.

The Supreme Court has held that "retaliation offends the Constitution [because] it threatens to inhibit exercise of the protected right" and "is thus akin to an unconstitutional condition demanded for the receipt of a government-provided benefit." *Craw-*

*ford–El v. Britton*, 523 U.S. 574, 588 n. 10, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (citations omitted). Further, the Supreme Court has stated that "the existence of a statutory right implies the existence of all necessary and appropriate remedies." *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 69, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (citation omitted). As such, the Supreme Court has interpreted other anti-discrimination statutes to include an implied right to be free from retaliation. *See Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (finding that 42 U.S.C. § 1982 prohibited retaliation even though the text of § 1982 does not mention retaliation), *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (finding that retaliation is actionable despite the lack of an express bar on retaliation in the statutory language of 42 U.S.C. § 1983). The D.C. Circuit interpreted the Supreme Court's holding in *Sullivan* to support the proposition that a statute prohibiting discrimination should be construed to confer an "[i]mplicit … cause of action protecting people from private retaliation for refusing to violate other people's rights under § 1981 or for exercising their own § 1981 rights." *Fair Employment Council v. BMC Mktg. Corp.*, 28 F.3d 1268, 1280 (D.C.Cir.1994) (discussing 42 U.S.C. § 1981, which broadly prohibits discrimination in contracting).

However, interpreting the Supreme Court's recent decision in *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), other circuits have split on the question of whether a private cause of action for retaliation exists under Title VI and Title IX. *Compare Peters v. Jenney*, 327 F.3d 307 (4th Cir.2003) (holding that a plaintiff can sue for retaliation under Title VI) *with Jackson v. Birmingham Board of Educ.*, 309 F.3d 1333 (11th

Cir.2002) (holding that a claim for retaliation does not lie under Title IX). The Supreme Court has interpreted Title IX consistently with Title VI, since Title IX "was patterned after Title VI," and reasoned that a finding based on the statutory language of Title VI should logically extend to Title IX as well. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 694–99, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

In *Sandoval*, the Supreme Court analyzed a regulation prohibiting disparate impact practices promulgated under Title VI § 602 and considered whether a private individual could bring an action for violations of the regulations forbidding disparate impact practices. The Supreme Court stated that it was "beyond dispute that private individuals may sue to enforce" § 601's prohibition on discrimination. *Sandoval*, 532 U.S. at 280, 121 S.Ct. 1511. The Supreme Court also stated that it was similarly beyond dispute that § 601 prohibits only intentional discrimination, and that regulations promulgated under § 602 applying § 601's ban on intentional discrimination are covered by the cause of action to enforce § 601. *Id.* at 282, 121 S.Ct. 1511. However, the Supreme Court held that the disparate-impact regulations promulgated under § 602 did not "simply apply § 601—since they forbid conduct that § 601 permits—and ... [thus] ... the private right of action to enforce § 601 does not include a private right to enforce these [§ 602] regulations." *Id.* at 285, 121 S.Ct. 1511. After deciding that the disparate-impact regulation reached beyond the statute it was implementing, the Supreme Court considered whether § 602 has the independent force to confer a private right of action to enforce disparate-impact regulations promulgated under § 602. *Id.* at 286, 121 S.Ct. 1511. The Supreme Court held that Title VI does not display an intent to create a "freestanding private right of action to enforce regulations promulgated under § 602." *Id.* at 293, 121 S.Ct. 1511. Therefore, no private right of action exists to enforce a regulation promulgated under § 602 that is not also a failure to comply with § 601. *Id.*

Adopting a broad interpretation of the Supreme Court's holding in *Sandoval*, the Eleventh Circuit interpreted the text of Title IX strictly, holding that a private claim for retaliation cannot lie under Title IX. *Jackson v. Birmingham Board of Educ.*, 309 F.3d 1333 (11th Cir.2002). The *Jackson* court relied heavily on the Supreme Court's assertion that:

> [P]rivate rights of action to enforce federal law must be created by Congress. The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. *Statutory intent on this latter point is determinative.* Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

*Sandoval*, 532 U.S. at 286–87, 121 S.Ct. 1511 (citations and quotations omitted) (emphasis added). The *Jackson* court emphasizes that the *Sandoval* court relied "exclusively on the text and structure of Title VI" in determining that "Title VI implies no private right to sue for actions not motivated by discriminatory intent that result in a disparate impact." *Jackson*, 309 F.3d at 1341, quoting *Sandoval*, 532 U.S. at 293, 121 S.Ct. 1511. As such, the *Jackson* court focused exclusively on the text of § 901 of Title IX to determine that, because the text of Title IX does not expressly provide any private right of action for retaliation, there was no congressional intent to prevent or redress retaliation. *Id.* at 1346.

However, the plaintiffs in *Sandoval* relied on a regulation promulgated under § 602 as the basis for implying a private right of action for disparate-impact discrimination. The *Sandoval* Court scrutinized legislative intent to determine whether Congress intended to create a "freestanding private cause of action to enforce regulations under § 602" *only after* the Court had decided that the regulations were outside the scope of actions prohibited by the existing cause of action under § 601. *Sandoval,* 532 U.S. at 293, 121 S.Ct. 1511. While the *Sandoval* Court rejected the notion that § 601 reached beyond intentional discrimination to include disparate-impact discrimination, the Court did not address whether retaliation was within the scope of the statutory proscription of § 601 prohibiting intentional discrimination. *See Sandoval* 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517. The question before this Court is not grounded on any regulations promulgated pursuant to § 602; instead, the Court considers whether a retaliation claim is impliedly within the scope of intentional discrimination prohibited by § 601 and thus falls under the cause of action provided to enforce § 601.

The *Jackson* court notes that "the fact that Congress felt required to prohibit retaliation expressly under Title VII may indicate that Congress did not intend the concept of 'discrimination' in Title IX to be read sufficiently broadly to cover retaliation." *Jackson,* 309 F.3d at 1345, n. 12. This position is inconsistent with the Supreme Court's interpretation of other anti-discrimination statutes. *See supra Sullivan,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386, *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Accordingly, this Court agrees with the Fourth Circuit's interpretation of Title VI. The Fourth Circuit held that the lack of a specific prohibition of retaliation in Title VI does not "lead to an inference that Congress did not mean to prohibit retaliation in § 601" because "relevant precedent interpreting similarly worded antidiscrimination statutes" construed "discrimination" to include "retaliation." *Peters v. Jenney,* 327 F.3d 307, 316–317 (4th Cir.2003) (considering whether an anti-retaliation regulation promulgated under § 602 is consistent with § 601 and enforceable by an implied private right of action). The Supreme Court has not overturned its previous holdings that statutes prohibiting discrimination also prohibit retaliation. *See supra Sullivan,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386, *Perry,* 408 U.S. 593, 92 S.Ct. 2694. Therefore, the question of whether the § 601 cause of action prohibiting discrimination implicitly includes a cause of action against retaliation is still guided by the Supreme Court's interpretation that a statute prohibiting discrimination also prohibits retaliation.

Guided by the Supreme Court and the D.C. Circuit's application of Supreme Court precedent, this Court concludes that an action against retaliation is implicitly within the scope of Title VI's prohibition on intentional discrimination. Based exclusively on the Supreme Court's previous decisions interpreting statutes that prohibit discrimination to also prohibit retaliation, this Court recognizes a private right of action for retaliation for the exercise of § 601's right to be free from intentional discrimination.

**b. Title VI Retaliation Analysis**

■ As with a discrimination claim, a plaintiff is not required to set forth the *prima facie* elements of a retaliation claim at the initial stage. *See Sparrow,* 216 F.3d at 1116. However, Chandamuri may plead himself out of court by alleging facts that indicate Georgetown's entitlement to prevail. *Id.* The Court must consider whether

Chandamuri will *ever* be able to meet his initial burden of establishing a *prima facie* case.

### 1. Georgetown's Lack of Notice of the Protected Activity

 To meet the prima facie elements for a claim of retaliation, a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) he was subjected to adverse action and (3) there existed a causal link between the adverse action and the protected activity. *Jones v. WMATA*, 205 F.3d 428, 433 (D.C.Cir.2000). He must also demonstrate that his exercise of protected rights was known to the defendant. *See Carter–Obayuwana v. Howard University*, 764 A.2d 779, 791 (D.C.2001); *see also Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996).

 To satisfy the first element of a claim for retaliation, Chandamuri need only prove he had a reasonable good faith belief that the practice he opposed was unlawful under Title VI. *Carter–Obayuwana*, 764 A.2d at 790 (citations omitted). Chandamuri alleges that his complaint to Dr. Kertesz that Dr. Roepe had graded him differently from other "similarly situated" students constituted a protected activity. Although he need not have used "magic words" in his Fall 2000 complaint about Dr. Roepe, Chandamuri was required to make Georgetown aware of the protected activity, i.e. that his complaint was "about allegedly discriminatory conduct." *Id.* Nowhere does Chandamuri allege that he told Dr. Kertesz that believed Dr. Roepe was discriminating against him because of race and national origin when he gave him a B+ in the independent study class; he merely alleges that he believed he was being treated "unfairly" and "differently than other students." While "magic words" are not required to communicate that the complaint was about unlawful discrimination, the court is unconvinced that Georgetown was on notice that the allegations Chandamuri made against Dr. Roepe in Fall 2000 had anything to do with discrimination, and therefore, Chandamuri will never be able to meet his burden and his retaliation claim cannot stand.

Further, Chandamuri does not allege that the Honor Council Hearing Board or Dean McAuliffe retaliated against him; rather, he claims that Dr. Roepe subjected him to disparate disciplinary procedures in retaliation for Chandamuri's complaint to Dr. Kertesz. This argument fails for two reasons. First, according to the Honor Code, Dr. Roepe was obligated to report any apparent violations of the Honor Code to the Honor Council. Consequently, reporting Chandamuri was not a judgment call on the part of Dr. Roepe. Second and more importantly, Dr. Roepe was *not* a member of the Hearing Board, nor did he have authority over the sanction the Honor Council imposed. Because Dr. Roepe had no voice in the sanction imposed, the sanction cannot logically have been imposed by Dr. Roepe in retaliation for Chandamuri's alleged protected action.

### 2. Chandamuri's Inability to Establish Causation

 Assuming *arguendo* that Chandamuri indeed complained of discrimination based on national origin in Fall 2000 and that defendant Georgetown was aware of this discrimination complaint, Chandamuri's retaliation claim fails because his complaint demonstrates that he will not be able to establish a causal connection between lodging his complaint against Dr. Roepe and his sanction. To prevail on his retaliation claim, Chandamuri must make a *prima facie* showing that the adverse action would not have occurred "but for" the protected activity.

*See Gregg v. Hay–Adams Hotel,* 942 F.Supp. 1, 8 (D.D.C.1996) (Lamberth, J.). To prove that a causal connection existed between his activities and the alleged retaliatory action, Chandamuri must demonstrate that Georgetown knew of his protected activity and that the retaliation closely followed the protected activity. *Mitchell v. Baldrige,* 759 F.2d 80, 84 (D.C.Cir.1985). This Circuit has found that temporal proximity may sometimes be sufficient to establish the requisite causal connection for retaliation claims. *See Gleklen v. Democratic Cong. Campaign Comm.,* 199 F.3d 1365, 1368 (D.C.Cir. 2000); *Cones v. Shalala,* 199 F.3d 512, 521 (D.C.Cir.2000). However, the Supreme Court has indicated that where "mere temporal proximity" is the only evidence of causation, the proximity must be "very close." *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). The Supreme Court cited cases where an adverse action taken three to four months after the alleged protected activity was insufficient temporal proximity to demonstrate a causal connection, and stated that a period of twenty months "suggests, by itself, no causality at all." *Id.* at 273–74, 121 S.Ct. 1508. Thus, "the greater the time that elapses between the protected activity and the alleged retaliation, the more difficult it is to justify an inference of causal connection between the two." *Kilpatrick v. Riley,* 98 F.Supp.2d 9, 21 (D.D.C.2000) (Urbina, J.). In this case, the lapse of well over a year between the protected activity and the allegedly retaliatory sanction precludes a finding that there was a causal connection between the two.

The evidence Chandamuri sets forth is simply insufficient to link the sanction to the allegedly protected activity in Fall 2000. The D.C. Circuit has held that "[i]n some cases, it is possible for a plaintiff to plead too much; that is, to plead himself out of court by alleging facts that render success on the merits impossible." *Sparrow,* 216 F.3d at 1116. Because Chandamuri's pleadings make it impossible for him to establish any causal link between his alleged protected activity and the sanction he received, his claim for retaliation under Title VI is dismissed.

### c. DCHRA Retaliation Analysis

██ The standard for a *prima facie* case of retaliation under the DCHRA mirrors the standard under Title VI. *See Mitchell,* 759 F.2d at 86; *Howard Univ. v. Green,* 652 A.2d 41, 45 (D.C.1994). Because the Court finds that Chandamuri has set forth facts that render success on the merits impossible in his Title VI claim for retaliation, Chandamuri's claim for retaliation under the DCHRA cannot stand and must also be dismissed.

## E. CONCLUSION

This Court concludes that Chandamuri has not proffered any facts from which reasonable inferences of discrimination or retaliation can be made. Even under the generous standard of pleading set forth, conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss. The complaint fails to set forth facts that would provide any basis for an inference that support a reasonable inference that either Dr. Roepe or the Georgetown University Honor Council intentionally disciplined Chandamuri for the purpose of discriminating against him on the basis of his national origin, or in retaliation for his previous encounter with Dr. Roepe. At best, Chandamuri demonstrates that he and Dr. Roepe had an poor relationship. For the reasons discussed in detail *supra,* the Court does not accept the speculative, unsubstantiated assertions and legalistic argumentation set forth by Chandamuri. For the reasons stated above,

Georgetown's motion to dismiss is granted as to Chandamuri's federal claims and Chandamuri's state law claims are dismissed pursuant to 28 U.S.C. § 1367.

A separate order shall issue this day.

### ORDER

Upon consideration of Defendant's Motion to Dismiss [3], it is hereby ORDERED that Defendant's Motion to Dismiss [3] is GRANTED, and this action is hereby DISMISSED WITH PREJUDICE.

SO ORDERED.