*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

DISTRICT OF COLUMBIA COURT OF APPEALS

No. 16-CV-1135

DISTRICT OF COLUMBIA, APPELLANT,

v.

JANET BRYANT,[*] PERSONAL REPRESENTATIVE FOR THE
ESTATE OF TYRONE BRYANT, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2009-CA-006832-B)

(Hon. Maurice A. Ross, Trial Judge)

(Argued February 12, 2019                    Decided January 4, 2024)

*Stacy L. Anderson*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia at the time, and *Loren L. AliKhan*, Acting Solicitor General at the time, were on the brief, for appellant.

*Steven C. Kahn* for appellee.

*Stephen B. Pershing*, with whom *Alan R. Kabat* was on the brief, for Metropolitan Washington Employment Lawyers Association, *amicus curiae*, in support of appellee.

---

[*] Following Tyrone Bryant's death, this court granted a motion to substitute Tyrone Bryant's wife, Janet Bryant, as appellee.

Before BECKWITH and EASTERLY, *Associate Judges*, and GLICKMAN,** *Senior Judge*.

Opinion of the court by *Associate Judge* BECKWITH.

Dissenting opinion by *Senior Judge* GLICKMAN at page 33.

BECKWITH, *Associate Judge*: The District of Columbia asks us to revisit and rethink our prior decisions characterizing the standard for demonstrating causation for retaliation claims under the District of Columbia Human Rights Act (DCHRA) as a less than but-for standard rather than a but-for standard. In the context of employment discrimination claims, but-for causation requires the employee to show "that the causal link between injury and wrong is so close that the injury would not have occurred but for the act." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013). Motivating-reason causation—the standard on which the jury was instructed here—is a "lessened causation standard" under which "[i]t suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Id.* The jury here found that appellee Tyrone Bryant, who had brought retaliation claims against his former employer, the Department of Youth

---

** Judge Glickman was an Associate Judge of the court at the time of argument. He began his service as a Senior Judge on December 21, 2022.

Rehabilitation Services (DYRS), under the DCHRA and Title VII of the Civil Rights Act of 1964, had proven that his support of a former colleague's sexual harassment lawsuit against their employer was a motivating reason in DYRS's decision to fire Mr. Bryant. The jury also concluded that Mr. Bryant had not met the higher burden of proof to show that his participation was a but-for cause of his termination—the causation necessary to prevail on his separate Title VII retaliation claim.

The District argues that we should reexamine the causation standard for DCHRA retaliation claims because, in its view, the plain language of the retaliation provision and the act's structure and history support a but-for causation standard. And while the District acknowledges that a less than but-for standard has long been the accepted standard for retaliation claims in D.C.—a fact bolstered by a consistent line of cases and a longstanding jury instruction to that effect—it contends that the Supreme Court's holding in *Nassar* that a but-for standard applies to Title VII retaliation claims, while not controlling, warrants our following suit.

We decline the District's invitation and affirm the jury's verdict in Mr. Bryant's favor on the DCHRA claim. The District argues that our cases have assumed, without deciding, that a less than but-for causation standard applies to DCHRA retaliation claims. To the contrary, the decisions have consistently discussed, applied, and espoused—rather than simply assumed—a less than but-for

causation standard for retaliation claims under the DCHRA. While the matter is not uncomplicated or one-sided, and an en banc court may set that line of precedent on a new course, this panel is bound by that case law. *See M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971) (stating that only the en banc court can "overrule a prior decision of this court" (footnote omitted)). And the Supreme Court's decision in *Nassar* does not, in our view, constitute the kind of intervening case law that would merit a three-judge division overruling a consistent line of precedent on this issue.

## I.

The record on appeal and evidence presented in the second trial[1] show the following relevant facts. Mr. Bryant worked for approximately 18 years at DYRS, the District of Columbia agency that "administers detention, commitment, and aftercare services for youth living in its facilities or residing in the community." For

---

[1] There were two trials in this case. During the first trial, the court granted judgment as a matter of law to the District on the ground that "Mr. Bryant had failed to provide sufficient evidence that a reasonable jury could infer that Mr. Bryant's superiors had knowledge of his intent to testify." *Bryant v. District of Columbia* (*Bryant I*), 102 A.3d 264, 267 (D.C. 2014) (per curiam). The trial court denied Mr. Bryant's motion for a new trial and his motion to reopen the case to admit a deposition of another employee. *See id.* This court reversed the trial court's judgment for the District and remanded the case for a new trial after determining that Mr. Bryant had presented circumstantial evidence that established his prima facie case. *Id.* at 269-70. The District now appeals the verdict at the second trial.

several years until his termination in 2008, Mr. Bryant served as a shift commander at the facility formerly known as Oak Hill, where he was responsible for the care and custody of the youth who resided in the facility's units and for supervising the Youth Correctional Officers.

After DYRS terminated Mr. Bryant, Mr. Bryant sued the District for violations of the DCHRA and Title VII of the Civil Rights Act of 1964—statutes that prohibit retaliating against employees who aid or participate in another employee's discrimination claim. D.C. Code § 2-1402.61(a); 42 U.S.C. § 2000e-3(a). Specifically, Mr. Bryant alleged that he was fired in retaliation for his participation in, and planned testimony in support of, a sexual harassment suit filed by his former coworker, Zina Hunter, against the District. DYRS provided evidence that it terminated him for other, nonretaliatory reasons.

At trial, the court instructed the jury that the questions whether Mr. Bryant had engaged in a protected activity and whether he had suffered an adverse action were not disputed and that the jury need only decide whether there was a causal connection between the protected activity and the adverse action.[2] Over the

---

[2] The court described Mr. Bryant's claim as challenging his "terminat[ion] in retaliation for stating that he would tell the truth when he testified in a deposition in a sexual harassment lawsuit brought against the District of Columbia." The court instructed the jury, however, that it would "not have to decide whether the plaintiff

District's objection, the court gave the jury the two-part causation instruction proposed by Mr. Bryant: The jury could find that Mr. Bryant met the causation element of his DCHRA claim if he proved that his engagement in a protected activity was a motivating reason for the District's adverse employment action, while a Title VII violation required proof that the protected activity was a but-for cause of the adverse action. The jury found on a special verdict form that Mr. Bryant had proven by a preponderance of the evidence that his engagement in a protected activity was a motivating reason for DYRS's decision to terminate him but that he had not met the higher but-for causation standard. The trial court accordingly entered a judgment against the District on Mr. Bryant's DCHRA claim (but not his Title VII claim) in the amount of $663,360 and denied the District's motion for judgment notwithstanding the verdict.

## II.

The District makes two main arguments on appeal: (1) that the trial court erred in rejecting its request to apply a but-for standard of causation to Mr. Bryant's

---

engaged in protected activity" because the court was instructing the jury that Mr. Bryant had done so. In response to a subsequent jury note, the trial court further instructed that the protected activity in this case was "participation by Mr. Bryant in the Hunter litigation."

DCHRA claim[3] and (2) that even under the lesser causation standard, the evidence was insufficient because it failed to show that the decisionmaker had actual knowledge of his protected activity at the time of his termination.

We review de novo issues of statutory interpretation and issues regarding the propriety of a jury instruction. *Lewis v. Washington Hosp. Ctr.*, 77 A.3d 378, 379-80 (D.C. 2013); *Wilson-Bey v. United States*, 903 A.2d 818, 827 (D.C. 2006) (en banc). We also apply a de novo standard of review—using the same standard as the trial court—to the trial court's ruling on the District's motion for judgment as a matter of law after the jury verdict. *Railan v. Katyal*, 766 A.2d 998, 1006 (D.C. 2001). Judgment as a matter of law may be granted only if the evidence viewed in the light

---

[3] As a threshold matter, we disagree with Mr. Bryant's contention that the District waived its challenge to the motivating-reason instruction. The District's assertion that the instruction ran afoul of the U.S. Supreme Court's decision in *Nassar* was sufficient to notify the court of the nature and basis of the objection, and—contrary to Mr. Bryant's argument—a party is not required to object to an instruction after it is given to preserve its challenge for appeal. *District of Columbia v. Wilson*, 721 A.2d 591, 601 n.18 (D.C. 1998) ("To require plaintiffs to object [again] after the instructions were given is to require a pointless formality." (alteration in original) (quoting *Brown v. AVEMCO Inv. Corp.*, 603 F.2d 1367, 1371 (9th Cir. 1979))). We also reject Mr. Bryant's argument that the District was required to specifically assert at trial that but-for causation is embedded in the DCHRA's anti-retaliation provision to preserve this argument for appeal. "Once a . . . claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992); *see also Benn v. United States*, 801 A.2d 132, 140 n.7 (D.C. 2002).

most favorable to Mr. Bryant provides "no legally sufficient evidentiary basis for a reasonable jury to find" for him. *Id.* (citing Super. Ct. Civ. R. 50). "This is an exacting standard," *id.*, that is met "only in the unusual case[] in which only one conclusion could reasonably be drawn from the evidence." *Etheredge v. District of Columbia*, 635 A.2d 908, 915 (D.C. 1993).

### A. Binding Precedent Dictates That a Less Than But-For Causation Standard Applies to DCHRA Retaliation Claims

For decades—including a full decade since the Supreme Court decided *Nassar*—we have consistently applied a less stringent standard than but-for causation to retaliation claims under the DCHRA.[4] In the District's view, this court is not bound by its previous statements on this causation standard because, among other things, this issue has never been squarely presented to the court. *See Murphy v. McCloud*, 650 A.2d 202, 205 (D.C. 1994) ("A point of law merely assumed in an opinion, not discussed, is not authoritative." (quoting *In re Stegall*, 865 F.2d 140, 142 (7th Cir. 1989))); *id.* ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as

---

[4] The District conceded in its brief, and we have since explicitly held, that the motivating-reason standard applies to *status-based* discrimination claims under the DCHRA. *See Rose v. United Gen. Contractors*, 285 A.3d 186, 197 (D.C. 2022). The parties dispute only whether this same standard applies to retaliation claims.

having been so decided as to constitute precedents." (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925))).

But the issue has not "merely lurk[ed] in the record" of our cases. In 1993, this court discussed and ruled upon the appropriate causation standard in *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 369 & n.32, 370 (D.C. 1993). In that case, we affirmed a judgment based on a "substantial contributing factor" jury instruction[5] against a challenge that such a causation standard was too low and that a higher causation standard should apply. *See id.* The question whether "substantial contributing factor" was the proper causation standard for a DCHRA retaliation claim was "brought to the attention of the court" and "ruled upon." *See Murphy*, 650 A.2d at 205. The defendant had proposed a jury instruction with a higher causation standard[6] and on appeal had argued that the instruction the court gave had

---

[5] The jury instruction stated the following: "In dealing with . . . causal connection, I would instruct you that . . . causation means something was a substantial contributing factor. The law recognizes more than one reason for an action. You, however, determine if protected activity, that is, the discrimination claim, was a substantial contributing factor in Arthur Young's decision to collect the debt. It follows, therefore, that even though Arthur Young had a legal right to collect the note, plaintiff may establish her retaliation claim if she proves by a preponderance of the evidence that retaliation was a substantial factor in the decision." *Arthur Young*, 631 A.2d at 369.

[6] The employer's proposed jury instruction read: "If the defendant [Arthur Young & Company] has produced evidence of any reason other than sex for the acts complained of as retaliatory, then you must find for the defendant on this issue,

"erroneously permitted the jury to find retaliation even if [the employer] had a legitimate business reason" for taking the allegedly retaliatory action. *See Arthur Young*, 631 A.2d at 369 & n.32 (rejecting the defendant's argument that having a legitimate business reason protected it from liability because the "legal premise" of that argument was "incorrect"). In ruling on this issue, we held that the instruction was not erroneous and that the employer's legitimate business reason for its decision to take the allegedly retaliatory action "did not necessarily insulate it from liability for retaliation" under the DCHRA. *Id.* at 369. So the "substantial contributing factor" standard was not "merely assumed" as the dissent asserts. *See post* at 53. Instead, our rejection of a challenge to that standard was dispositive of the case. *See id.* at 356-57, 369-70.

This court has reaffirmed and reinforced this rule in the decades since *Arthur Young. See Daka, Inc. v. McCrae*, 839 A.2d 682, 690 (D.C. 2003) (affirming the jury's finding of retaliation because "the jury could readily find that retaliation was a factor substantially contributing to" the plaintiff's transfer and ultimate termination (citing *Arthur Young*, 631 A.2d at 369-70)); *Furline v. Morrison*, 953 A.2d 344, 351

---

unless you find—considering all the evidence in the case—that the plaintiff has proven by a preponderance of the evidence that the reasons given by the defendant were not worthy of belief, and that Arthur Young intentionally retaliated against [the plaintiff] Ms. Sutherland for filing charges of discrimination." *Arthur Young*, 631 A.2d at 369 n.32.

& n.9, 353 & n.28 (D.C. 2008) (applying a "wholly or partially" causation standard to Morrison's retaliation claim and her age discrimination claim and holding that the employer was entitled to judgment as a matter of law on both claims because "Morrison was disciplined *solely* for the legitimate reasons given" (emphasis added));[7] *cf.* Standardized Civil Jury Instructions for the District of Columbia No. 24-2 (rev. ed. 2022) ("To prove unlawful retaliation, [Plaintiff] must show that . . . [Plaintiff's] engaging in the protected activity was *a factor that contributed to* the defendant's [taking or threatening to take] the adverse action." (emphasis added)). Most recently in *Propp*, we reversed the trial court's order granting summary judgment for the employer because the jury could find that the employer's proffered nondiscriminatory reasons were "not the real reason (or the only reason) for its adverse actions." *Propp v. Counterpart Int'l*, 39 A.3d 856, 870-72 (D.C. 2012). Specifically, we held that the plaintiff could prevail in his DCHRA claim "by proving that [the employer's] actions were *motivated in substantial part* by retaliatory reasons, even if they were motivated also by legitimate business reasons."

---

[7] Because *Arthur Young* sets binding precedent, we need not rely on *Furline*, which discusses the standard only in dicta, as Mr. Bryant conceded at oral argument. The fact that we have stated in the context of a status-based discrimination claim that *Furline* did not "squarely address the level of causation necessary for a 'mixed motives' [DCHRA] claim," *see Rose*, 285 A.3d at 196 & n.5, does not undermine our conclusion that *Arthur Young* squarely addressed the level of causation necessary for a "mixed motives" DCHRA *retaliation* claim.

*Id.* at 870 (emphasis added) (citing *Furline*, 953 A.2d at 353). Although this standard was not necessary to the outcome of the case, *Propp* provides a formulation of the rule announced in *Arthur Young*.

It is true that we did not engage in an in-depth analysis of the issue or the text of the DCHRA in *Arthur Young*. Such analysis is not a requirement, though, for a case to constitute binding precedent. *See United States v. Nash*, 100 A.3d 157, 167-68 (D.C. 2014) (holding that a prior case controlled the outcome because "we are bound by our prior holdings even if those holdings are not fully explicated," the "discussion of the question is compressed, and more could be said on both sides of of the question" (citing *Mullin v. Brown*, 115 P.3d 139, 143 (Ariz. Ct. App. 2005))), *vacated in part on other grounds sub nom United States v. Lewis*, 107 A.3d 603 (D.C. 2015), *aff'd en banc on other grounds*, 147 A.3d 236 (D.C. 2016). *Arthur Young* is also unlike cases where the question truly lurked in the background. *Compare Murphy*, 650 A.2d at 205 (holding that the court had not decided whether it had jurisdiction over a certain type of case merely because it had reached the merits of a case without addressing—or being presented with—the jurisdictional issue), *District of Columbia v. Sierra Club*, 670 A.2d 354, 360 (D.C. 1996) (holding that the court had not decided the issue because both the parties and the court merely assumed a certain legal framework applied), *Hobson v. District of Columbia*, 686 A.2d 194, 197-98 (D.C. 1996) (holding that the court had not decided whether the

notice at issue constituted an "assessment" merely by using the term "assessment" before discussing the time period to appeal the assessment, which it called the "only disputed issue"), *and In re Q.B.*, 116 A.3d 450, 455 (D.C. 2015) ("That we have affirmed a conviction under a particular statute in the past does not foreclose subsequent parties from bringing legal challenges that could have been, but were not, raised in an earlier case."), *with Arthur Young*, 631 A.2d at 356-57, 369-70 (affirming a jury instruction's causation requirement against the defendant's argument that it was too lenient).[8]

It is also true that *Arthur Young* announced a substantial-factor standard, *see supra* at 9, while the jury in the case before us applied a motivating-reason standard. Different wording aside, both standards apply a less than but-for causation standard, and in its singular endorsement of a but-for standard in DCHRA retaliation cases the District does not contend that there is a material difference among the less stringent

---

[8] The dissent concedes that the standard applied in *Arthur Young* was part of its holding, rather than dicta, *see post* at 50-51, but suggests that a dispositive holding cannot be precedential unless the opinion contains a certain level of textual analysis. The dissent cites no specific authority for that proposition, and merely cites a general rule, *see post* at 51-52, that has been applied in cases that are easily distinguished, *see supra* at 12-13.

standards. In fact, at oral argument the District equated a substantial-factor standard with a motivating-factor standard when it characterized *Arthur Young* as applying a motivating-factor standard. The District also uses the terms interchangeably in its briefing. Because the District does not raise the issue, we would not normally address it. *In re Curtis*, 273 A.3d 841, 846 (D.C. 2022). Indeed, "[i]t is a basic principle of appellate jurisprudence that points not urged on appeal are deemed to be waived." *Rose v. United States*, 629 A.2d 526, 536 (D.C. 1993). This "self-restraint on our part is a corollary of our adversarial system, in which 'appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.'" *Id.* at 536-37 (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (1983)). Self-restraint is especially warranted when the issue is complex and the question is a close one. *Id.* at 537.

That is the situation here. Although the substantial-factor and motivating-reason standards are similar and often used interchangeably,[9] they remain distinct.

_____

[9] In *Rose v. United Gen. Contractors*, for example, although we applied a substantial-factor standard to the status-based provision in the DCHRA, we defined a substantial factor as a "significant motivating factor" and interchangeably used or quoted the phrases "substantial factor," "motivated," and "motivated partially by a discriminatory reason" to describe the standard the trial court should apply on remand. 285 A.3d 186, 196-98 (D.C. 2022); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) (holding that it was the plaintiff's

Self-evidently, the substantial-factor standard contains a substantiality component that the motivating-reason standard does not.[10] *See, e.g., Trump v. Carroll*, 292 A.3d 220, 237 n.17 (D.C. 2023) (in a scope-of-employment case, "qualify[ing]" a requirement that an employee be motivated "at least in part" by a purpose to serve the employer by excluding circumstances where the employee's conduct was "too little actuated"—that is, actuated to an "insignificant" degree—by the interest in serving the employer); *cf. Hasan v. U.S. Dep't of Lab.*, 400 F.3d 1001, 1006 (7th Cir. 2005) (stating, as to a "motivating factor," that "[i]ts precise weight in [the

_____

initial burden to show that his protected First Amendment activity was "a 'substantial factor' *or to put it in other words*, that it was a 'motivating factor' in the Board's decision not to rehire him" (emphasis added)).  Courts have widely interpreted *Mt. Healthy* as requiring proof that the protected activity was a "substantial or motivating factor," often treating the terms as synonymous or collapsing the standard into a "motivating-factor" test.  *See, e.g., Lemaster v. Lawrence Cnty., Kentucky*, 65 F.4th 302, 309 (6th Cir. 2023) (referring to the "substantial or motivating factor" test as "the motivating-factor test" while noting that some language in the Sixth Circuit's cases had "(wrongly) equated this motivating-factor test with but-for causation"); *Hasan v. U.S. Dep't of Lab.*, 400 F.3d 1001, 1005 (7th Cir. 2005) (describing *Mt. Healthy* as requiring the plaintiff to prove that his speech "was a 'motivating factor' in the employer's decision to take the adverse action."); *but see Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (interpreting *Mt. Healthy* to impose a "substantial motivating factor" test rather than a "substantial *or* motivating factor" test).

[10] Our decisions in *Daka* and *Propp* use similar substantiality language.  *Daka* analyzed whether retaliation was "a factor substantially contributing to" the employer's adverse actions, 839 A.2d at 690, and in *Propp*, the court required proof that the employer's actions were "motivated in substantial part" by retaliatory reasons, 39 A.3d at 870.

employer's] decision is not important"); *Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005) ("Where an improper factor exerts little or no influence on the employer's decision, such factor cannot be said to have played a *substantial* part in the employment decision."). Going forward, judges in the Superior Court should use the substantial-factor test upheld in *Arthur Young* and reaffirmed by us today. But given the history of interchangeable use of the two less than-but-for causation standards, and because the District has effectively conceded any argument in favor of one formulation over the other, we may affirm the verdict in the case before us notwithstanding that the jury was instructed to apply a standard that, while still a "lessened causation standard" than but-for causation, *Nassar*, 570 U.S. at 343, was not identical to the substantial-factor test we reaffirm today.

The dissent concedes that the substantial-factor standard is less stringent than but-for causation, but insists that any difference between the two is "theoretical" and, as a practical matter, "small or nonexistent." *See post* at 38. The dissent's dismissal of the difference between the two standards is unconvincing and contradicted by our case law. Our court has already distinguished between substantial factor and but-for causation. *See Rose*, 285 A.3d at 197 (reviewing decisions in other jurisdictions that rejected the but-for standard in favor of the lower standard of "substantial factor" and then adopting the substantial-factor standard for DCHRA status-based claims); *cf. Fleming v. United States*, 224 A.3d 213, 223 (D.C. 2020) (holding in a criminal

case that "the requirement that [the defendant's] conduct have been a substantial factor in [the victim's] death is not remotely equivalent to a requirement of but-for causation" and that the substantial-factor standard was a "less stringent" standard in "important respects"). The Supreme Court has too. *See Doyle*, 429 U.S. at 287 (holding that the defendant could avoid liability in a First Amendment suit by showing that, even though the protected activity was a substantial factor, it was not a but-for cause in the employment action). The Restatement also seems to draw this distinction. *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 26 (2010) (recognizing that some courts allow plaintiffs to "prevail by showing that the tortious conduct was a substantial factor in causing the harm" even if "the plaintiff cannot show the defendant's tortious conduct was a but-for cause," and categorizing the substantial-factor standard as a "more lenient standard").

The dissent's suggestion that the substantial-factor standard allows plaintiffs to prevail even "when the event would have occurred without" the retaliation, *see post* at 38, misses the point. The fact that a plaintiff has not *proven* that retaliation was a but-for cause of his termination does not necessarily mean that retaliation was *not* a but-for cause—the absence of proof is not proof of absence. The key difference between the substantial-factor standard and the but-for standard is not the causal link in reality, but the burden of proof the plaintiff must carry in practice. The lower burden that the substantial-factor standard places on plaintiffs can make the

difference in a case where retaliation was, in fact, a but-for cause of the employer's decision, but it is very difficult for a plaintiff to prove that.[11]

Recognizing the difference a lesser burden can make, some state courts have applied a substantial-factor standard instead of a but-for standard with the explicit purpose of better effectuating the legislative intent behind their human rights statutes.[12] This stance arises from the concern that requiring plaintiffs to show but-

---

[11] Imagine an employee receives a letter from his employer laying out the reasons for his termination. Those reasons include: (1) you were consistently late to work this month, (2) you did an inadequate job on your most recent project, and (3) you exhibited insubordination by expressing an intention to testify against your employer at an upcoming trial. In reality, the retaliatory reason—the third reason— was the final straw. Based on the letter, however, it would be hard for the employee to prove that the employer would not have fired him if not for that reason, because his tardiness and work product possibly would have caused the employer to fire him anyway. The employee could still prove that the retaliatory reason was a substantial factor in the decision, though, because the employer explicitly noted it as a reason for the termination.

[12] Title VII likewise recognizes the merits of a less stringent causation standard in specific circumstances. That federal statute creates an avenue for plaintiffs to recover limited damages when they can satisfy only a less than but-for causation standard. So a plaintiff may prevail by proving that discrimination was a motivating factor in the adverse action even if he cannot prove that it was not a but-for cause. 42 U.S.C. § 2000e-5(g)(2)(B)(i). In such circumstances, the employer is not liable for certain remedies—like back pay and reinstatement—that would not redress the plaintiff's injury because the adverse action would have occurred regardless of the discrimination. *See id.* § 2000e-5(g)(2)(B)(ii). Here, the District does not dispute the remedies the jury awarded Mr. Bryant and we need not address whether remedies would be so limited—or otherwise limited—in the DCHRA context. *Cf. Babb v. Wilkie*, 140 S. Ct. 1168, 1171 (2020) (holding that the plaintiff could prevail on a showing of less than but-for causation but would need to prove

for causation will thwart a legislature's goal to eradicate discrimination because of how difficult it can be to prove that even the most purely discriminatory motive was a but-for cause of an employer's action. In *Allison v. Hous. Auth. of City of Seattle*, for example, the Washington Supreme Court held that "a rigorous 'but for' causation requirement" was "too harsh a burden to place upon a plaintiff in a retaliation case" when enforcement of the State of Washington's antidiscrimination laws "depend[ed] in large measure on employees' willingness to come forth and file charges or testify in discrimination cases." 821 P.2d 34, 37 (Wash. 1991); *see id.* at 43 (noting that "[a]n employee does not have the access to proof that an employer usually has" and that "employees are at a distinct disadvantage in a retaliation case because they must prove causation without the benefit of the employer's own knowledge of the reason for the discharge."). Our prior decisions' application of a less than-but-for causation standard similarly fosters the Council's intent "to secure an end in the District of Columbia to discrimination for any reason other than that of individual merit."[13]

---

but-for causation to access certain remedies, including back pay and reinstatement, under a federal age discrimination statute that, like the DCHRA, does not explicitly set out different causation standards for different remedies).

[13] *Cf. also Mackay v. Acorn Custom Cabinetry, Inc.*, 898 P.2d 284, 287-88 (Wash. 1995) (en banc) ("The *Allison* court also refused to adopt the 'determining factor' standard in part because it believed that the weighty burden of proof with which the employee would be saddled would severely curtail the protection against retaliation afforded to that employee by the public policy of this State."); *id.* (stating that "Washington's disdain for discrimination would be reduced to mere rhetoric if

D.C. Code § 2–1401.01.  *Cf. Allison*, 821 P.2d at 37 (stating that adoption of a "but for" standard "would unduly hamper efforts to enforce the law against discrimination and would run contrary to the Legislature's intent to prevent discrimination").

Returning to the argument the District actually raised, we reject its request to follow the Supreme Court's approach to Title VII retaliation claims when determining what standard to apply to DCHRA retaliation claims.  *See Nassar*, 570 U.S. at 343.  Although we often look to Title VII case law for guidance as we interpret the DCHRA, we do not follow it automatically, and Title VII case law is not binding on us in the DCHRA context.[14]  *See Esteños v. PAHO/WHO Fed. Credit*

_____

this court were to require proof that [discrimination] was a 'determining factor' in the employer's adverse employment decision"); *id.* at 288 ("This court will not render its own words, and those of the Legislature, hollow.").

[14] Focusing on the similarity between the term "on account of" in the DCHRA and "because" in Title VII, *see post* at 43-45 & n.16, the dissent contends that we should follow the same path *Nassar* takes.  *See post* at 47.  We follow Title VII case law in construing the DCHRA only "when appropriate," however, *see Esteños v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 886 (D.C. 2008), and the very different structure and history of the statutes counsels against doing so here.  In light of our conclusion that our own cases are controlling, we need not delve into the relevant differences between the two statutes that make following Title VII inappropriate, except to note that the dissent, in stating that it perceives no material differences between the statutes, looks at these two phrases in isolation, without interpreting those terms in the context of the statutes' different structures and legislative histories.

*Union*, 952 A.2d 878, 886 (D.C. 2008). Indeed, the terms of the two statutes' pertinent provisions are different and can lead to different interpretations. *See Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 889 (D.C. 1998) (holding that individual partners in a law firm can be held liable under the DCHRA even though they cannot under Title VII); *Arthur Young*, 631 A.2d at 371-72 (permitting, given the text and legislative history of the DCHRA, punitive damages not available under Title VII). And the statutes' language has remained distinct in the wake of *Nassar*, as the Council has not amended the DCHRA's causation standard, despite making other amendments to the law during that period. *See, e.g.*, Fair Credit in Employment Amendment Act of 2016, D.C. Law 21-256, § 2(a), 64 D.C. Reg. 2045 (Feb. 24, 2017); Employment Protections for Victims of Domestic Violence, Sexual Offenses, and Stalking Amendment Act of 2018, D.C. Law 22-281, § 2(c), 66 D.C. Reg. 1601 (Feb. 8, 2019).[15]

---

[15] The dissent's characterization of the interpretation of the DCHRA as a straightforward issue is flawed. Indeed, in a seeming effort to provide clarity, the dissent's own quotation of the retaliation provision, *see post* at 43-44, removes a complication from what it calls the "unambiguous[]" text, *see post* at 42: the "on account of" language the dissent relies on does not appear in the first clause of the provision and thus cannot be the basis to say that the statute requires but-for cause across the board. *See* D.C. Code § 2-1402.61(a) ("It shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter."). This is in contrast

**B. Judgment as a Matter of Law**

We turn next to the question whether Mr. Bryant presented enough evidence at trial for the jury to find the District liable under the DCHRA as we have interpreted it. Where, as here, a plaintiff presents only circumstantial evidence of retaliation, courts apply the *McDonnell Douglas* burden-shifting framework. *Propp*, 39 A.3d at 862; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-03 (1973). Under this three-part framework, the plaintiff bears the initial burden to substantiate a prima facie case of retaliation, which the employer may counter with a legitimate, nonretaliatory reason for the adverse action, shifting the burden back to the plaintiff to show that the employer's reason is pretextual. *Id.* at 863.

---

to Title VII, which supplies a but-for causation standard by prohibiting actions taken "because [an employee] has opposed [certain practices] or because he has . . . participated in" certain "investigation[s], proceeding[s] or hearing[s]." 42 U.S.C. § 2000e-3. This omission weakens the dissent's view that "on account of" provides a causation standard for each of the different forms of retaliation listed in the provision and may indicate instead that the phrase "on account of" was used to describe three different types of plaintiffs—one who is retaliated against in the exercise or enjoyment of certain rights, one who is retaliated against for having exercised or enjoyed such rights, and one who is retaliated against for having aided or encouraged someone else in exercising or enjoying such rights. The only *clear* causation standard left would then be the "wholly or partially" standard in the employment discrimination provision. *Id.* § 2-1402.11(a). The issue, accordingly, is more complicated than the dissent implies, though again, our decision as a three-judge panel does not rest on this analysis.

Because the District produced evidence that it terminated Mr. Bryant for a legitimate, nondiscriminatory reason, we need not analyze whether Mr. Bryant made out a prima facie case of retaliation at trial. *See Furline*, 953 A.2d at 353. We can instead proceed to analyzing whether Mr. Bryant carried the ultimate burden of persuasion. *See id.* In answering this "ultimate question," we determine "whether the jury could infer retaliation . . . from the combination of (1) the plaintiff's *prima facie* case; (2) any evidence [of pretext]; and (3) any further evidence of discrimination . . . or any contrary evidence [presented by] the employer." *Id.* at 353-54 (cleaned up). The District argues that Mr. Bryant failed to carry this ultimate burden because he failed to prove that (1) the decisionmaker had actual knowledge of his protected activity and (2) DYRS's proffered reason for terminating him was pretextual.

### 1. Causation and Employer Knowledge

The only prima facie element on which the jury was required to make a finding was causation. The court stated that under Title VII, Mr. Bryant was required to establish "that but for his protected activity, his employment would not have been terminated," and that under the DCHRA, Mr. Bryant was required to prove "that the protected activity he engaged in was a motivating reason for [the employer's]

decision to terminate his employment."[16]  "The causal connection . . . may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Propp*, 39 A.3d at 868 (cleaned up).  The protected activity at issue was either Mr. Bryant telling management he would tell the truth when testifying in the sexual harassment lawsuit or his actual participation in that lawsuit.[17]

The District's primary argument is that Mr. Bryant could not establish the causal link between his termination and his protected activity under either causation standard because he has failed to show that the decisionmaker, Director of DYRS Vincent Schiraldi, had actual knowledge of Mr. Bryant's intention to testify truthfully in Ms. Hunter's lawsuit.

As we stated in *Bryant v. District of Columbia* (*Bryant I*), 102 A.3d 264, 269 (D.C. 2014) (per curiam), and as the jury in this case was instructed, Mr. Bryant

---

[16] The jury was instructed that Mr. Bryant had "engaged in protected activity" and had "satisfied the second element of his claim because termination of employment constitutes an adverse employment action" and that it therefore did not need to decide those issues.  The District does not challenge those instructions or those elements on appeal.

[17] The court's jury instruction suggested the former, and its response to a jury note suggested the latter.  *See supra* note 2.  Although this discrepancy might affect a causation analysis, no one has ever focused on it and thus we do not either.

could prove causation with direct or circumstantial evidence. There, we reversed the trial court's order granting judgment as a matter of law and allowed the trial to go forward based on Mr. Bryant's trial testimony "that the sexual harassment case was a topic of discussion among departmental personnel and that he escorted a legal team around the facility that was investigating the claim," his testimony "that he told the District's lawyers and [Deputy Superintendent of Operations David] Thomas, in the presence of Superintendent [Dexter] Dunbar, about his intent to testify in that case," and [Chief of Committed Services David] Muhammad's deposition testimony "that Superintendent Dunbar made the recommendation to terminate Mr. Bryant—a recommendation that was passed from Dunbar to Muhammad to Schiraldi." *Id*.

Mr. Bryant presented slightly different evidence at the second trial. First, Mr. Bryant testified that during the tour, he did not tell the lawyers that he would be testifying in Ms. Hunter's case, but instead told them, after they apprised him that he might be called to testify, that it was "common knowledge" that Ms. Hunter had been harassed. Second, Mr. Bryant presented the jury with conflicting evidence about whether Mr. Dunbar recommended *terminating or transferring* Mr. Bryant— as Mr. Muhammad testified—or only *transferring* him, as Mr. Dunbar testified; in closing arguments, he suggested the latter.

The evidence is still sufficient to show decisionmaker knowledge. The

District does not dispute that apart from these two variations, all of the evidence presented at the first trial was also presented to the jury in the second trial. The record at the second trial includes evidence that in October 2008—before Mr. Schiraldi secured approval for Mr. Bryant's termination on November 17, 2008—Mr. Dunbar and Mr. Thomas called Mr. Bryant into Mr. Dunbar's office. Mr. Bryant testified that they told him during that meeting that Adrienne Lord-Sorensen, "a lawyer for DYRS," would "prep" him regarding what he could and could not say if he testified in Ms. Hunter's lawsuit. Mr. Bryant responded: "I don't know what you're telling me for, because I'm going to tell the truth anyway. The girl was sexually harassed." Mr. Bryant later told Ms. Lord-Sorensen: "I don't need to be prepped. I'm telling the truth"—"Zina Hunter was sexually harassed." According to Mr. Muhammad's testimony, he and Mr. Dunbar had had multiple conversations about Mr. Bryant, Mr. Dunbar recommended that Mr. Bryant be terminated or transferred, and on the basis of the information Mr. Dunbar provided, Mr. Muhammad recommended to Mr. Schiraldi that he terminate Mr. Bryant.

Although the District argues that there was no direct evidence that Mr. Schiraldi knew about Mr. Bryant's engagement in protected activity, such evidence was not necessary. It was enough that Mr. Bryant presented evidence that Mr. Dunbar, who reported to Mr. Muhammad, knew of his protected activity and that Mr. Dunbar was involved in a "direct chain of conversation" through

Mr. Muhammad with the decisionmaker, Mr. Schiraldi, about terminating Mr. Bryant.[18]  *See Bryant I,* 102 A.3d at 269 (holding that the evidence that Mr. Bryant had told Mr. Dunbar about his intention to testify, that Mr. Dunbar had recommended to Mr. Muhammad that they terminate Mr. Bryant, and that Mr. Muhammad had passed this recommendation on to Mr. Schiraldi was "enough evidence from which a reasonable jury could infer that Director Schiraldi had actual knowledge" of Mr. Bryant's protected activity); *cf. Jones v. Bernanke,* 557 F.3d 670, 679 (D.C. Cir. 2009) (holding that the plaintiff did not need to provide direct evidence that his supervisors knew about his protected activity to create a reasonable

---

[18] While this evidence was enough, it was not required.  Mr. Bryant could have instead proven causation under a "cat's paw" theory—specifically, by presenting evidence that Mr. Dunbar was aware of his protected activity and recommended his termination and that this tainted Mr. Schiraldi's decision to fire him even if Mr. Schiraldi lacked actual knowledge of the activity.  *See Furline,* 953 A.2d at 357 ("The pertinent issue under our local law is whether the employer took an adverse personnel action for a discriminatory [or retaliatory] reason.  That standard is met when the action is induced by and effectuates the illicit design of a lower-level supervisor, even if the implementing officials are an unwitting conduit." (cleaned up)); *Holbrook v. District of Columbia,* 259 A.3d 78, 94 n.13 (D.C. 2021) ("This court has previously recognized that *McFarland*'s 'employer awareness' requirement could be limited if an employee established causation based on a 'cat's paw' theory of liability." (citing *Bryant I,* 102 A.3d at 268 n.3, and *Staub v. Proctor Hosp.,* 562 U.S. 411, 418-20 (2011))).  The District argued that Mr. Bryant failed to present sufficient evidence to succeed under a cat's paw theory but did not contest that cat's paw was an available avenue to prove causation.  We need not address whether a jury could have reasonably found causation under a cat's paw theory in this case, however, because we conclude that there was sufficient evidence from which the jury could have found Mr. Schiraldi had actual knowledge.

inference of employer knowledge; the jury could infer such knowledge based on the evidence that *the Board* knew because it was sufficient that "the *employer* had knowledge of the employee's protected activity, and the adverse personnel action took place shortly after that activity." (cleaned up)); *cf. also Bryant I*, 102 A.3d at 269 (citing *Jones*, 557 F.3d at 679); *Leavitt v. SW & B Constr. Co., LLC*, 766 F. Supp. 2d 263, 280-81 (D. Me. 2011) (holding that the jury could reasonably infer decisionmaker knowledge of an employee's disability based on evidence that the decisionmaker "conferred with individuals who did know about [the employee's] disability before the final decision to terminate was made").

The two differences between the evidence at issue in *Bryant I* and the evidence before us now do not undermine this conclusion. First, that Mr. Bryant presented different evidence of the protected activity itself—an element of the retaliation claim that the trial court directed the jury to find and that the District does not dispute was proven—does not affect the jury's assessment of who had knowledge of that activity. And second, although Mr. Bryant told the jury in closing arguments that Mr. Dunbar "recommended transfer, ultimately, instead of termination," and Mr. Dunbar's testimony supported that finding, Mr. Muhammad testified that Mr. Dunbar had recommended both options—termination or transfer. Therefore, although the jury may have been given conflicting evidence on this point, it would have been reasonable for it to credit Mr. Muhammad's testimony over Mr. Dunbar's and to

determine, as the court in *Bryant I* did, that Mr. Dunbar recommended that Mr. Bryant be terminated.[19] *See Bryant I*, 102 A.3d at 269. Accordingly, the evidence about Mr. Dunbar's recommendation does not meaningfully differ from the evidence we considered in *Bryant I*.

Because the evidence before us is not meaningfully different from the evidence we considered in *Bryant I*, our holding in *Bryant I* that Mr. Bryant presented sufficient evidence of actual knowledge controls. The District's contention that *Kolowski*—a case with facts that are meaningfully different from the facts before us—controls instead is unpersuasive. *Compare Kolowski v. District of Columbia*, 244 A.3d 1008, 1014 (D.C. 2020) (holding, under the Whistleblower Protection Act, that the jury could not reasonably infer that the decisionmaker had actual knowledge merely because of temporal proximity between the protected activity and the adverse action and the decisionmaker's *expectation* that leadership

---

[19] The District argues that Mr. Bryant abandoned the argument that Mr. Dunbar recommended his termination because he conceded in his pretrial statement and argued at trial that Mr. Dunbar recommended only his transfer. Notwithstanding Mr. Bryant's arguments, the jury heard evidence that Mr. Dunbar recommended that Mr. Bryant be terminated *or* transferred and could reasonably find actual knowledge on that basis. And in any event, the parties have not pointed to any authority—and we are aware of none—requiring agreement between the person with direct knowledge of the protected activity and the decisionmaker as to the preferred adverse action before the "chain of conversation" between them can support an inference of actual knowledge. *See Bryant I*, 102 A.3d at 269.

would keep him "apprised of all important issues facing" the department (emphasis added)), *with Bryant I*, 102 A.3d at 269 ("Mr. Bryant has demonstrated that an individual who recommended his termination knew of his protected activity and that there was a *direct chain of conversation* between that individual (Superintendent Dunbar) and the decisionmaker (Director Schiraldi) *about firing Mr. Bryant*." (emphasis added)).

## 2.  Pretext

Pretext does not, as the term might imply, require proof that the stated nonretaliatory reason was a deceptive coverup of the actual reason.  *See generally* Michael Starr, *The Muddle of "Motivating Factor": Using the Logic of Human Action to Inform Employment Discrimination Law*, 35 Hofstra Labor & Emp. L.J. 89, 112-15 (2017).  Instead, Mr. Bryant had to show only that his employer's decision to terminate him was in some respect motivated by retaliatory reasons, "even if they were motivated also by legitimate business reasons." *Propp*, 39 A.3d at 870.

The District's proffered nonretaliatory reason for terminating Mr. Bryant, as read to the jury in its instructions, was that Mr. Bryant "failed to demonstrate that he was able to move DYRS towards its goal of implementing the 'Missouri approach,'"

a rehabilitation-centered model for youth corrections, and that Mr. Bryant's "disciplinary history played a role in the ultimate decision to terminate [his] employment." Mr. Schiraldi testified that he terminated Mr. Bryant because he did not think Mr. Bryant was well suited for the Missouri Model, but he could not recall why he had that impression.

Mr. Bryant introduced evidence to show this reason was pretextual. The jury heard testimony from Mr. Thomas, one of Mr. Bryant's supervisors, that Mr. Bryant was an "outstanding shift commander" who worked well with the residents of Oak Hill and who was qualified to fill many of the numerous correctional job vacancies in DYRS in November 2008. Mr. Bryant himself testified that he worked at DYRS for close to 18 years, that DYRS regularly promoted him, and that Mr. Thomas and Mr. Dunbar asked him to lead a group of the District's attorneys on a tour of Oak Hill, indicating they trusted him. And in contrast to Mr. Bryant's self-declared support of Ms. Hunter, Mr. Schiraldi was enthusiastic, according to his own testimony, about LaVern Evans—the person who allegedly sexually harassed her. Based on this evidence, the jury could reasonably have concluded that the performance-based justification for firing Mr. Bryant was pretext for retaliation.

The jury could look to the circumstantial evidence presented in Mr. Bryant's prima facie case to find that a retaliatory motive could have been at least part of the

motivation for Mr. Bryant's termination. Based on the record, the jury could have reasonably found that Mr. Dunbar and Mr. Thomas spoke to Mr. Bryant well before he was terminated, and Mr. Dunbar spoke to Mr. Muhammad and recommended termination, as stated above. The temporal proximity of the protected activity to Mr. Bryant's termination does not stand alone, as the District argues, but it remains another piece of circumstantial evidence that a jury could weigh in Mr. Bryant's favor as establishing both employer knowledge and pretext. *See Propp*, 39 A.3d at 868 ("The causal connection . . . may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." (cleaned up)).

This record provides no basis for disturbing the jury's reasonable findings where it was "given both a mixed-motive and a but-for instruction [and,] after weighing the evidence, decide[d] to split the baby," *Ponce v. Billington*, 679 F.3d 840, 845 (D.C. Cir. 2012)—a consequence that the District of Columbia, like several other jurisdictions whose courts have interpreted their local statutes to provide a different standard for retaliation claims than but-for causation,[20] must grapple with

---

[20] *See, e.g.*, *Kell v. Autozone, Inc.*, No. C064839, 2014 WL 509143, at *15-17 (Cal. Ct. App. Feb. 24, 2014) (unpublished); *Consiglio v. Cigarette*, No. CV126027652S, 2014 WL 783471, at *4 (Conn. Super. Ct. Jan. 27, 2014) (unpublished); *Davis v. Jackson Public Schs.*, No. 344203, 2020 WL 3621292, at *8-9 (Mich. Ct. App. July 2, 2020) (unpublished); *Knutson v. Wenatchee Sch. Dist.*

in the wake of *Nassar*.

## III.

For the foregoing reasons, we reject the District's invitation to overturn longstanding case law addressing the correct causation standard under the D.C. Human Rights Act. We therefore affirm the judgment of the Superior Court.

*So ordered.*

GLICKMAN, *Senior Judge*, dissenting: I respectfully dissent for two reasons that I will discuss herein. First, even if Mr. Bryant needed to prove that a retaliatory motive was only a "substantial contributing factor" in his termination to prevail on his DCHRA claim, we should order a new trial on that claim. This is so because the "motivating reason" instruction that the trial court gave with respect to that claim, over the District's timely objection, did not require the jury to find that the alleged retaliatory motive was a substantial contributing factor in his termination. On the record before us, this instructional error on a central issue at trial has not been waived

---

*#246*, No. 32540-7-III, 2015 WL 4456245, at *19 (Wash. Ct. App. July 21, 2015) (unpublished); *cf. King v. Cowboy Dodge, Inc.*, 357 P.3d 755, 761 & n.10 (Wyo. 2015) (acknowledging that the Supreme Court interpreted Title VII to impose a but-for standard of causation for retaliation claims but holding that a "substantial and motivating factor" standard of causation applies to claims of retaliation brought under state tort law).

and cannot be deemed harmless.

Second, I disagree with the majority's conclusion that Bryant needed to prove that a retaliatory motive was only a "substantial contributing factor" in his termination to succeed on his DCHRA claim. The anti-retaliation provision of the DCHRA, D.C. Code § 2-1402.61(a), provides as follows: "It shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, *or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter.*" (Emphasis added). Bryant claimed that DYRS retaliated against him in violation of the italicized third clause in this statute, i.e., "on account of" his having supported a former colleague's sexual harassment lawsuit against DYRS. The words "on account of" mandate a but-for standard of causation. Moreover, it is settled by our precedents that we construe Section 2-1402.61(a) to provide the same protection from retaliation as the "opposition clause" in Title VII of the federal Civil Rights Act of 1964. The Supreme Court has held that this clause requires proof of but-for causation.[1]

---

[1] *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) (holding that "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action").

I do not agree that binding precedent, stemming from *Arthur Young & Co. v. Sutherland*,[2] requires us to continue to adhere to a different and less demanding standard of causation in retaliation cases under the DCHRA. In insisting on such adherence in the face of both the statutory language and the Supreme Court's construction of its counterpart in Title VII, my colleagues fail to acknowledge that our prior cases endorsing a "substantial contributing factor" standard *never even considered* the governing language in Section 2-1402.61(a); nor did our prior cases *even consider*, let alone reject, an alternative but-for causation standard. The critical question of what causation standard the District of Columbia Council prescribed was one that "lurked in the record" but was "neither brought to the attention of the court nor ruled upon" in the precedents on which the majority relies.[3] Those precedents therefore do not preclude us from recognizing, at long last, what our controlling statute says.[4]

That statute is unambiguous. To prevail in this case, Bryant needed to prove that DYRS would not have terminated his employment *but for* his support of another employee's sexual harassment lawsuit against it. But in returning a verdict for the

---

[2] 631 A.2d 354 (D.C. 1993).

[3] *Murphy v. McCloud*, 650 A.2d 202, 205 (D.C. 1994) (quoting *Webster v. Fell*, 266 U.S. 507, 511 (1925)).

[4] *Id.*

District on Bryant's Title VII claim, the jury found that Bryant's support for the sexual harassment lawsuit was *not* a but-for cause of his termination. In my view, the District of Columbia therefore is entitled to entry of judgment in its favor on Bryant's claim that DYRS retaliated against him in violation of the DCHRA.

## I. Deficiency of the "Motivating Reason" Jury Instruction

My colleagues in the majority acknowledge that the trial court erred in giving the "motivating reason" causation instruction. That instruction was erroneous, they explain, because it deviated materially from the "substantial contributing factor" standard of causation: "the substantial-factor standard contains a substantiality component that the motivating-reason standard does not." *Ante* at 15. "A 'substantial factor' means . . . a *significant motivating factor bringing about* the employer's decision," even if it was not "the sole factor in the decision."[5] But the trial court did not instruct the jury that the "motivating reason" needed to be "substantial," "significant," "contributing," or consequential in any way. Instead, the court allowed Bryant's counsel to tell the jury that a "motivating reason" would support a finding of liability under the DCHRA even if it made no difference at all given the (lawful) "other motivating reasons" for the employer's action. The

---

[5] *Rose v. United Gen. Contractors*, 285 A.3d 186, 197 (D.C. 2022) (emphasis added, internal quotation marks and citation omitted).

majority opinion thus concedes that the jury was not required to find that retaliation was a "substantial contributing factor." *See ante* at 16 (stating that "the jury was instructed to apply a standard that . . . was not identical to the substantial-factor test we reaffirm today"); *see also id.* at 31 ("Mr. Bryant had to show *only* that his employer's decision to terminate him was in some respect motivated by retaliatory reasons, 'even if they were motivated also by legitimate business reasons.'" (emphasis added)); *id.* at 32 (holding the evidence of causation sufficient because the jury could "find that a retaliatory motive could have been at least part of the motivation for Mr. Bryant's termination").

My colleagues also do not dispute that the instructional error was prejudicial (though they decline, without explaining why, to concede it). The "motivating reason" instruction clearly allowed the jury to find the District liable under the DCHRA without finding that the posited retaliatory motive was a substantial contributing factor in the decision to terminate Bryant, and his counsel took full advantage of that leeway in closing argument. There is no reason to think the jury made the necessary "substantial contributing factor" finding or anything like it, and my colleagues do not suggest the jury did so. Had the trial court given the causation instruction that the majority holds was required, the jury quite plausibly might have found that the alleged retaliatory motive was *not* a significant motivating factor bringing about the employer's decision. It is telling that, in returning a verdict for

the District on the Title VII claim, the jury found that DYRS would have terminated Bryant even without the retaliatory motive. To be sure, our cases have viewed the "substantial contributing factor" standard as less stringent than but-for causation, *see ante* at 16-18. However, as the Supreme Court has observed, it appears that "no case has been found where the defendant's act could be called a substantial factor when the event would have occurred without it."[6] Likewise, the majority opinion cites no case in which a factor was deemed to have "substantially contributed" to a result that would have occurred anyway in the absence of that factor. Clearly, the theoretical difference between a "substantial contributing factor" standard and a but-for standard is, as a practical matter, small or nonexistent.[7] Given that the jury in this

---

[6] *Burrage v. United States*, 571 U.S. 204, 215-16 (2014) (quoting W. Keeton et al., *Prosser and Keeton on Law of Torts* § 41 at 268 (5th ed. 1984) (hereinafter, "Prosser and Keeton")). My colleagues acknowledge that "[w]here an improper factor exerts little or no influence on the employer's decision, such factor cannot be said to have played a *substantial* part in the employment decision." *Ante* at 16 (quoting *Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005)).

[7] *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 26 cmt. j ("Substantial factor") (Am. L. Inst. 2010) (explaining that "[t]he 'substantial-factor' test as the routine standard for factual cause . . . has proved confusing and been misused," and that "the element that must be established . . . is the but-for . . . standard"). The Reporters' Note to this comment elaborates as follows:

> With the sole exception of multiple sufficient causes [i.e., causes that overdetermine the outcome], "substantial factor" provides nothing of use in determining whether factual cause exists. . . . The essential requirement . . . is that the party's tortious conduct be a

case found no but-for causation, it therefore is quite likely that a properly instructed jury would have found no "substantial contributing factor" causation either. At a minimum, the instructional error identified by the majority cannot be deemed harmless.

Yet in spite of the trial court's material and prejudicial deviation from what the majority itself holds is the governing standard of liability, my colleagues deem it appropriate to affirm the verdict for the plaintiff on the DCHRA count. Their reasons do not stand up to scrutiny. First, the majority opinion observes that this and other courts have erroneously conflated a "motivating reason" standard with a "substantial [contributing] factor" standard. Second, the majority then faults the District for its understandable terminological confusion of the two standards. The majority treats that faux pas as amounting to some sort of waiver, despite the

---

necessary condition for the occurrence of the plaintiff's harm: the harm would not have occurred but for the conduct. To the extent that substantial factor is employed instead of the but-for test, it is undesirably vague. As such, it may lure the factfinder into thinking that a substantial factor means something less than a but-for cause or, conversely, may suggest that the factfinder distinguish among factual causes, determining that some are and some are not "substantial factors." Thus, use of substantial factor may unfairly permit proof of causation on less than a showing that the tortious conduct was a but-for cause of harm or may unfairly require some proof greater than the existence of but-for causation.

District's explicit objection at trial and on appeal to what the majority concedes was the inadequate "motivating reason" instruction. *Ante* at 13-16 & n.9.

But the fact that the District (like some courts, including this one) may not hitherto have appreciated or argued the material difference between the improper "motivating reason" standard and a properly articulated "substantial contributing factor" standard is of no significance to the present appeal. What is significant is that the District has consistently pressed its argument that the "motivating reason" instruction given to the jury in this case over its objection was erroneous because it did not require a sufficient showing of causation. The District challenged that instruction on that basis at trial, and it has challenged it on that same basis on appeal. That the District's argument for a but-for causation instruction "also was flawed" in the majority's view (because the District has not argued for an intermediate "substantial contributing factor" instruction) "does not nullify [the District's] objection to the court's instruction."[8] The District's objection "served as adequate notice of the claim"[9] that the court's instruction required too little causal connection and needed to be more demanding to comply with existing law. So there has been

---

[8] *Wood v. Hancock County Sheriff's Dep't*, 354 F.3d 57, 64 n.12 (1st Cir. 2003).

[9] *Id*.

no "waiver."[10]

Since the majority *agrees* with the District that the jury was erroneously instructed on an unduly lax causation standard, and merely disagrees with the District over which more demanding causation instruction ("substantial contributing factor" or but-for causation) should have been given, and since the instructional error cannot be deemed harmless, I fail to see how the majority can affirm the jury's verdict in favor of Bryant. Under the majority's own analysis, we should remand for a new trial on the DCHRA retaliation claim.

---

[10] Indeed, the majority concedes that the District has *not* "waived its challenge to the motivating-reason instruction." *Ante* at 6-7 n.3 (citations omitted). This therefore is not a case for applying the "basic principle of appellate jurisprudence that points not urged on appeal are deemed to be waived." *Rose v. United States*, 629 A.2d 526, 536 (D.C. 1993). And although my colleagues invoke the principles of waiver and appellate "self-restraint" (as *Rose* characterized it) specifically with respect to whether there is a difference between the "motivating reason" and "substantial contributing factor" standards, *ante* at 14, their majority opinion itself goes on to settle the question: it proceeds explicitly to identify the material difference between the two standards; to "reaffirm" the "substantial contributing factor" standard as the governing one, *ante* at 16; and to acknowledge that the instruction actually given at Bryant's trial over the District's objection was *not* a "substantial contributing factor" instruction, and hence was erroneous. Since the error cannot be deemed harmless, all that remains is to remand for a new trial on the DCHRA retaliation claim, at which the jury would be instructed on the proper causation standard. This is not a decision that implicates the principles cited by the majority of waiver and appellate self-restraint. So those principles have no bearing on this appeal.

## II. The Applicable Standard of But-For Causation

The majority chooses to duck what I take to be the central question of how to interpret the causal standard explicitly set forth in the third clause of D.C. Code § 2-1402.61(a). Although, surprisingly enough, this court has not heretofore addressed that question, my colleagues are of the view that the question has been settled by precedent. In my view, that is not true, but even if that were so, we cannot continue to ignore what the statute specifically and unambiguously requires.

We review questions of statutory interpretation de novo, following the "primary and general rule" that "the intent of the lawmaker is to be found in the language that [it] has used."[11] "In examining that language, it is axiomatic that the words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them."[12] Accordingly, "[w]e will give effect to the plain meaning of a statute when the language is unambiguous and does not produce an absurd result."[13]

---

[11] *Sharps v. United States*, 246 A.3d 1141, 1149 (D.C. 2021) (alteration in original) (citation omitted).

[12] *Id.* (quotation marks and citation omitted).

[13] *Id.* (quotation marks and citation omitted). We also may look to the statute's "legislative history to ensure that our interpretation is consistent with legislative

Moreover, as a rule, "[w]e follow cases construing Title VII in interpreting and applying the provisions of the DCHRA 'when appropriate,' that is, to the extent that the acts use similar words and reflect a similar purpose."[14]  For that reason, we consistently have said that we construe D.C. Code § 2-1402.61(a) "to guarantee employees the same protection from retaliation as is provided by the so-called 'opposition clause' in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) (2007)."[15]  Title VII's opposition clause makes it unlawful for an employer to discriminate against an employee "because" the employee opposed an unlawful employment practice or supported an investigation, proceeding, or hearing

---

intent."  *Id.* (citation omitted).

[14] *Esteños v. PAHO/WHO Fed. Credit Union*, 952 A.2d 878, 886 (D.C. 2008) (citations omitted).

[15] *Vogel v. D.C. Off. of Plan.*, 944 A.2d 456, 463 n.12 (D.C. 2008); *see also Carter-Obayuwana v. Howard Univ.*, 764 A.2d 779, 790 n.20 (D.C. 2001) (stating that "the same analysis is employed" under the DCHRA's prohibition against retaliatory employer conduct as under Title VII's opposition clause"); *Arthur Young*, 631 A.2d at 367 (explaining that, in interpreting the anti-retaliation statute in the DCHRA, "we look for guidance" to "the analogous anti-retaliation provisions of Title VII of the Civil Rights Act").  The federal courts also look to Title VII and its jurisprudence in analyzing retaliation claims under the DCHRA.  *See, e.g.*, *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 85 (D.D.C. 2003) ("The standard for a *prima facie* case of retaliation under the DCHRA mirrors the standard under Title VI[I]."); *Beckwith v. Career Blazers Learning Ctr.*, 946 F. Supp. 1035, 1041 (D.D.C. 1996) ("The elements of a retaliatory claim are the same under DCHRA as under the federal employment discrimination laws.").

under Title VII.

The applicable clause of D.C. Code § 2-1402.61(a) states that "[i]t shall be an unlawful discriminatory practice to . . . retaliate against . . . any person . . . *on account of* [that person] having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter."[16]  (Emphasis

---

[16] This is the third clause of Section 2-1402.61(a).  This is the clause that applies to Bryant's claim that DYRS retaliated against him for having supported another employee's exercise or enjoyment of her rights under the DCHRA.  The majority observes that the "on account of" language does not appear in a different clause (the first clause) of Section 2-1402.61(a).  *Ante* at 21-22 n.15.  That is irrelevant, as the proper construction of the first clause is not in issue here, since it narrowly applies only to retaliation against a person "in" that person's exercise or enjoyment of their own rights.  In contrast, both the second and the third clause of Section 2-1402.61(a) apply to retaliation "on account of" an individual's *past* protected activity, i.e., either "having exercised or enjoyed" their own rights under the DCHRA (clause two) or "having aided or encouraged any other person in the exercise or enjoyment" of their rights (clause three).  The first clause, however it is construed, cannot be read so broadly that it renders the second and third clauses superfluous.  *See School St. Assocs. Ltd. P'ship v. District of Columbia*, 764 A.2d 798, 807 (D.C. 2001) ("Common rules of statutory construction require us to avoid conclusions that effectively read language out of a statute whenever a reasonable interpretation is available that can give meaning to each word in the statute."); *Thomas v. D.C. Dep't of Emp. Servs.*, 547 A.2d 1034, 1037 (D.C. 1988) ("A basic principle is that each provision of the statute should be construed so as to give effect to all of the statute's provisions, not rendering any provision superfluous.").  The first clause of Section 2-1402.61(a) thus has no bearing here.

All that said, I believe the first clause also requires but-for causation, for three reasons: (1) we construe the statute to incorporate the same causal standard as its counterpart in Title VII; (2) as explained *infra*, but-for causation is the recognized default rule in the absence of language to the contrary; and (3) it would be incongruous for the first clause to have an unstated causal standard that is different

added.) The ordinary meaning of "on account of" in both common parlance and legal usage is "because of" or, synonymously, "by reason of."[17] When these terms are used in statutes, courts understand them to impose a requirement of but-for causation.[18] As the Supreme Court has explained, "[t]his but-for requirement is part of the common understanding of cause."[19] The Court has called it "textbook tort law that an action 'is not regarded as a cause of an event if the particular event would have occurred without it.'"[20] Accordingly, but-for causation is the "default rule[]"

---

from the standard explicitly adopted in the other clauses.

[17] *See Rousey v. Jacoway*, 544 U.S. 320, 326 (2005) (first citing *Random House Dictionary of the English Language* 13 (2d ed. 1987); and then citing *Webster's Third New International Dictionary* 13 (1981)); *see also Nassar*, 570 U.S. at 350 ("[T]he ordinary meaning of 'because of' is 'by reason of' or 'on account of.'" (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009))).

[18] *See Burrage,* 571 U.S. at 212-14 (2014) ("Our insistence on but-for causality has not been restricted to statutes using the term 'because of.'"); *Nassar*, 570 U.S. at 350; *Gross*, 557 U.S. at 176; *see e.g., Bridge v. Phoenix Bond & Indemnity Co.,* 553 U.S. 639, 652-55 (2008) (recognizing that the phrase "by reason of" requires at least a showing of "but for" causation); *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 63-64, and n.14 (2007) (observing that "[i]n common talk, the phrase 'based on' indicates a but-for causal relationship and thus a necessary logical condition" and that the statutory phrase "based on" has the same meaning as "because of") (internal quotation marks omitted); *Holmes v. Sec. Inv. Protection Corp.,* 503 U.S. 258, 265-68 (1992) (equating "by reason of" with but-for cause).

[19] *Burrage*, 571 U.S. at 211; *accord Fleming v. United States*, 224 A.3d 213, 221 (D.C. 2020) (en banc).

[20] *Nassar*, 570 U.S. at 347 (quoting *Prosser and Keeton* § 41 at 268).

that the legislature "is presumed to have incorporated, absent an indication to the contrary in the statute itself."[21] There is no such contrary indication in the DCHRA relating to the "on account of" requirement in Section 2-1402.61(a) or the legislative history of the provision.

The conclusion that the words "on account of" in the DCHRA's anti-retaliation provision incorporate a but-for causation standard is reinforced by comparing Section 2-1402.61(a) with D.C. Code § 2-1402.11(a)(1), the provision of the DCHRA that prohibits discrimination in employment based on race, religion, age, sex, or other enumerated characteristics. Section 2-1402.11(a)(1) states that its prohibitions apply to actions taken "wholly or partially for a discriminatory reason." In view of the "wholly or partially" causal language, we concluded in *Rose v. United General Contractors* that a substantial or motivating factor standard of causation applies to status-based discrimination claims under Section 2-1402.11(a)(1) rather than a but-for standard of causation.[22] But such "wholly or partially" language is conspicuously absent from Section 2-1402.61(a). Thus, as the majority opinion concedes, *ante* at 8 n.4, the holding of *Rose* does not extend to retaliation claims; there is no justification for reading Section 2-1402.61(a) as if it reads like

---

[21] *Id*.

[22] 285 A.3d at 195-97 (using the two terms interchangeably).

Section 2-1402.11(a)(1) when it does not. Rather, we are obliged to respect the Council's use of different language to describe the causation standard for retaliation claims. "[W]here the legislature implements a significant change in language,… courts presume a significant change in meaning."[23]

In 1993, when this court nonetheless approved the "substantial contributing factor" standard of causation for retaliation cases under the DCHRA provision, it did not mean to deviate from the causation standard under Title VII's opposition clause. On the contrary, the court *said* it looked to "the analogous anti-retaliation provisions of Title VII" for "guidance in interpreting our local [DCHRA anti-retaliation] statute."[24] However, it was not until twenty years later, in 2013, that the Supreme Court, in *Nassar*, clarified that by using the word "because," Title VII's opposition clause "requires proof that the desire to retaliate was the but-for cause of the challenged employment action."[25] So now we know that in our past DCHRA retaliation cases, we deviated from the but-for causation standard of Title VII *by mistake*. We have every reason to correct that mistake and follow the Supreme

_____

[23] *Animal Legal Def. Fund v. Hormel Foods Corp*., 258 A.3d 174, 184 (D.C. 2021).

[24] *Arthur Young*, 631 A.2d at 367.

[25] *Nassar*, 570 U.S. at 352.

Court's authoritative holding that anti-retaliation claims are governed by a but-for causation standard. Stare decisis certainly "does not oblige [this court] to follow, inflexibly, a ruling whose jurisprudential basis has been 'substantially undermined' by subsequent Supreme Court decisions."[26] Rather, it would most accord with our precedents to clarify our interpretation of our statute to bring it in line with the Supreme Court's clarification of the counterpart provision in Title VII.

The majority responds that the "pertinent provisions" of D.C. Code § 2-1402.61(a) and 42 U.S.C. § 2000e-3(a) "are different and can lead to different interpretations." *Ante* at 21. But on the causation question now before us, there is no material difference that would justify a different interpretation of the standard of causation. That the DCHRA provision uses the term "on account of" while the Title VII provision uses the term "because" is not a material difference (nor does the majority contend it is) because the two terms are synonyms, as explained above. The majority identifies only two differences between the statutes, namely that (1) partners in a law firm can be held personally liable under the DCHRA but not under Title VII, and (2) punitive damages are available under the DCHRA but not under Title VII. *Ante* at 21. But those differences are minor and tangential; they have nothing to do with the standard of causation. The differences cited by the majority

---

[26] *Smith v. United States*, 984 A.2d 196, 200 (D.C. 2009) (citations omitted).

furnish no reason for this court to deviate from its well-established policy of looking to Title VII for guidance in construing our anti-retaliation statute "to the extent that the acts use similar words and reflect a similar purpose."[27]

The majority opinion also argues that adoption of a less-than-but-for causation standard is desirable to make it easier for plaintiffs to prevail and thereby foster the Council's stated goal of "secur[ing] an end in the District of Columbia to discrimination for any reason other than that of individual merit."[28] *Ante* at 19. In *Burrage*, the Supreme Court rejected the Government's similar argument against construing the words "results from" in a statute to require proof of but-for causation,[29] and its reasons apply here as well. First, the Court noted that "but-for causation is not nearly the insuperable barrier the Government makes it out to be."[30] Second, the Court noted the "vexing" problems with understanding how to apply a "substantial contributing factor" test.[31] Third, and most important, the policy

---

[27] *Esteños*, 952 A.2d at 886 (citations omitted).

[28] D.C. Code § 2-1401.01.

[29] *Burrage*, 571 U.S. at 217-18.

[30] *Id.* at 217.

[31] *Id.* at 217-18 ("vexing" because lower courts would have to "guess" at "how important or how substantial a cause must be to qualify" as a substantial contributing factor).

arguments "are beside the point," the Court said, because the Court's role "is to apply the statute as it is written—even if we think some other approach might accord with good policy."[32]  So, too, here.

My colleagues assert, however, that regardless of the right interpretation, our hands are tied because binding precedent requires us to disregard the express requirement of Section 2-1402.61(a) and accept the less demanding "substantial contributing factor" standard for mixed-motive retaliation claims under the DCHRA. I disagree.

*Arthur Young* and the other decisions cited by the majority ignored the text of Section 2-1402.61(a) and its "on account of" requirement.  None of the decisions construed or even purported to comply with that governing statutory provision.  Nor did the decisions consider the applicability of a but-for causation test apart from any statutory warrant for it.[33]  In effect, the *Arthur Young* court simply assumed the answer to a critical question—what standard of causation the relevant statute imposes—that the court failed to ask or even recognize, and the subsequent cases

---

[32] *Id.* at 218 (internal quotation marks, brackets, and citation omitted).

[33] *Arthur Young* only rejected a different test, one that would have enabled the employer to defeat liability for retaliation merely by showing that it had a non-retaliatory, legitimate business reason for its adverse action.  *See Arthur Young*, 631 A.2d at 369-70.  Showing the existence of such a legitimate reason does not suffice in itself to show that the retaliatory motive was not a but-for cause.

simply followed in *Arthur Young*'s footsteps without further inquiry.

My colleagues counter that those cases *did* uphold the "substantial contributing factor" instruction and that "our rejection of a challenge to that standard was dispositive of the case." *Ante* at 10. But that misses my point, which is not that this court's acceptance of the "substantial contributing factor" standard was only dicta, but that the court approved that standard without addressing (or even evincing awareness of) the statutory language governing the issue, and without considering the applicability of a but-for test. The most that can be said about *Arthur Young* and the other cases cited by the majority is that they required *at least* a "substantial contributing factor" standard of causation, but not that they foreclosed a but-for causation standard if the terms of the law and its harmonization with Title VII required that standard. No prior decision of this court has rejected the higher standard of but-for causation or barred this court from adopting that standard if we determine that the statute requires it.

It would be remarkable indeed if decisions that never even considered a statute's applicable terms could have the effect of precluding this court from properly interpreting and applying the statute without going en banc to do so. Fortunately, that is not the case. Under well-established principles in our jurisprudence, our past decisions do not have such preclusive effect.

"The rule of *stare decisis* is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question."[34] "A point of law merely assumed in an opinion, not discussed, is not authoritative."[35] "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."[36] The "precise question" now before us—what causation standard is required by the express terms of D.C. Code § 2-1402.61(a)—was not "brought to the attention" of this court in its past DCHRA retaliation cases. The "judicial mind" was not "applied" to that question and did not "pass" or "rule" upon it; the "substantial contributing factor" standard was "merely assumed" to be applicable and not explained or justified under the governing law.

This, therefore, is a paradigm case for fresh consideration of what our statute requires, especially because of the intervening clarification effected by the Supreme Court's decision in *Nassar*. In disputing that conclusion, the majority argues that "an in-depth analysis" of an issue or the text of a statute is not a requirement for a

---

[34] *Murphy*, 650 A.2d at 205 (quoting *Fletcher v. Scott*, 277 N.W. 270, 272 (Minn. 1938)).

[35] *Id.* (quoting *In re Stegall*, 865 F.2d 140, 142 (7th Cir. 1989)).

[36] *Id.* (first quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925); and then citing *Thompson v. United States*, 546 A.2d 414, 423 n.14 (D.C. 1988)).

case to constitute binding precedent. *Ante* at 12. But what we have here is not merely a series of cases in which the holding at issue was "not fully explicated," the discussion was "compressed," and "more could [have been] said on both sides of the question." *Ante* at 12 (quoting *United States v. Nash*, 100 A.3d 157, 167-68) (D.C. 2014)). This was a series of cases in which the answer to a critical question of statutory interpretation was merely assumed and announced without any proper judicial consideration of the statute or recognition that the answer to the question was governed by a statute.

I conclude that this court's past failure to consider Section 2-1402.6(a) and construe its requirement of but-for causation is not binding on us and does not justify the majority's refusal to construe the statute now. To refuse to do so is a continuing dereliction of our judicial duty to apply the law as the legislature has promulgated it. And given the Supreme Court's resolution of the question in *Nassar*, which the District brought to the trial court's and our attention and relies on, the time certainly is ripe for us to do so.

Accordingly, because the jury actually did find that a retaliatory motive was not a but-for cause of Bryant's termination, I would reverse the judgment in his favor and remand for entry of judgment for the District.